[No. 22378. Department One. October 2, 1930.]

THE STATE OF WASHINGTON, *on the Relation of George W. Bentley, Appellant,* v. HENRY R. FRENGER, *Respondent.*[1]

[1]Reported in 291 Pac. 1089.

684

*C. T. McDonald,* for appellant.
*J. F. Aiken,* for respondent.

PARKER, J.—The relator, Bentley, commenced this habeas corpus proceeding in the superior court for Spokane county seeking to be awarded the custody of a male minor child in the custody of the defendant, Frenger. This controversy is over the paternal parentage of the child, Bentley and Frenger each claiming to be the father of the child. A trial of the cause upon the merits in the superior court resulted in findings and judgment awarding the custody of the child to Frenger, and denying the relief prayed for by Bentley, from which judgment Bentley has appealed to this court.

On October 13, 1917, Frenger and Margarite Schumacker, nee Kendall, were lawfully joined in marriage in Seattle, in this state, by due ceremony performed by a judge of the superior court for King county. They thereafter cohabited as husband and wife up until the time she died on July 12, 1929, except during intervals, some of which will be presently noticed. During that period, there were born to Mrs. Frenger, as the fruit of that marriage, three children, one of whom survives now, about ten years old. There was also born to Mrs. Frenger during that period a fourth child, the one here in question. Frenger was absent from his wife, serving as a soldier in the United States Army, about one year during the World War, being honorably discharged therefrom in May, 1919. Soon thereafter, they moved to Spokane and established their home there, where he has maintained the home ever since. Mrs. Frenger was a trained beauty parlor

operator, and worked at that vocation a considerable portion of the time after they moved to Spokane. She worked in Spokane and Wallace, Idaho, and two or three other towns in Idaho, in territory readily accessible to Spokane by stage and railway, she returning often to the home maintained there by Frenger.

On September 10, 1924, Mrs. Frenger, then working at her vocation in Wallace, Idaho, went with Bentley to Missoula, Montana, where they went through a marriage ceremony in pursuance of a license therefor procured by Bentley from the proper Montana licensing officer. They returned to Wallace. She thereafter continued to return occasionally to the Frenger home in Spokane. Frenger did not learn of this illegal Montana marriage until some six months thereafter, when she herself told him of its occurrence. Among her frequent returns to the Frenger home in Spokane was one continuing at least from July 2 to July 9, 1926, and probably longer. During this period, as upon other visits, they lived and cohabited as husband and wife. On April 10, 1927, the child in question was born to Mrs. Frenger. An experienced physician testified as follows:

"Q. Doctor, what is the period of gestating? A. 280 days. . . . Q. Assuming that a child was born on the 10th day of April, 1927, approximately when would be the conception period? A. Somewhere between the 1st and 7th of July."

Mrs. Frenger continued to occasionally return to the Frenger home in Spokane as she had theretofore done. Frenger, realizing the seriousness of her unfortunate alliance with Bentley, advised her to take legal steps looking to freeing herself entirely from that alliance; she being also desirous of doing so. To that end, Frenger gave her money, suggesting a divorce from Bentley, but evidently not using the word "di-

vorce" in a technical sense as distinguished from annulment of the illegal marriage. Frenger did nothing more than this in that behalf, and did not become a party to, or actively interest himself in any other manner in, any court proceedings looking to that end.

On December 3, 1928, Mrs. Frenger, using the name of Margarite Bentley as plaintiff, filed her complaint in the district court for Shoshone county, Idaho, praying for a divorce from Bentley upon the grounds of non-support, and to be awarded the custody of the child in question. She was then working in Wallace in that county. Bentley, being personally served with summons in that county, defaulted for want of answer or other pleading in response to her complaint. On January 3, 1929, that court awarded to Mrs. Frenger, naming her as Margarite Bentley, a decree of divorce from Bentley, and also awarded to her the custody of the child here in question. It is apparent from the record of that case introduced in evidence in this case, that that court was not advised as to the illegality of the Missoula marriage between Mrs. Frenger and Bentley. On July 12, 1929, Mrs. Frenger died in a hospital in Spokane. The child in question was then, and since then has been, in the custody of Frenger. These, we think, are all of the facts of this controversy necessary to be here noticed, and are either undisputed or clearly established by the evidence. There is much more to this distressing story which may well be left untold.

The argument here made in behalf of Bentley, looking to a reversal of the judgment of the superior court, is, as we understand his counsel, rested upon three grounds: (1) The presumption that his marriage to Mrs. Frenger, as Margarite Kendall, at Missoula, Montana, on September 10, 1924, was a legal marriage; (2) the further presumption following there-

from that he is the father of the child in question, it being conceived and born during the existence of that marriage relation; and (3) that the decree of divorce rendered by the Idaho court constitutes an adjudication that he is the father of the child, binding upon Frenger. We notice these propositions in this order.

■ We readily concede that the marriage ceremony performed by a minister or officer authorized by law to perform such ceremony, purporting to unite in marriage a man and a woman, with their consent, gives rise to a presumption that they are each qualified to enter into such marriage relation, as well as that such marriage is in all other respects legal. But while this is a strong presumption and grows stronger with the passing of years, it is not conclusive or incapable of being overcome by other evidence aided by other counter presumptions. In the text of 18 R. C. L. 416, 417, we read:

"The usual presumption of law is that a fact continuous in its nature, such as marriage, continues after its existence is once shown, but the presumption in favor of the validity of a marriage attaches with full force to the latest marriage, and the presumption of the continuance of the first marriage, based upon the naked fact that it was solemnized, is not equal in probative force to the presumption in favor of the legality of the subsequent marriage. This is based on the doctrine that the presumption of innocence, morality and legitimacy will counterbalance and preponderate against the presumption of continuance of the former relations. When a marriage has been consummated in accordance with the forms of law, it is presumed that no legal impediments existed to the parties entering into such marriage, and the fact, if shown, that either or both of the parties have been previously married, and that such wife or husband of the first marriage is still living, does not destroy the *prima facie* legality of the last marriage. The presumption in such a case is that the former marriage has been

legally dissolved, and the burden that it has not rests upon the party seeking to impeach the last marriage.''

In this case, the lawful marriage of Frenger to Mrs. Frenger in 1917 is clearly proven by a proper certificate of that marriage and the positive testimony of Frenger. It is not contended here but that that marriage was legal at the time it was solemnized. Indeed, we think there is no room for such contention, in view of the fact that the evidence warrants the conclusion that Frenger had never been married before at that time, and that, while Mrs. Frenger had been married once before, her former husband was then dead.

The continuance of the marriage relation between Mr. and Mrs. Frenger up to the time of her death in 1929 is proven by their cohabitation as husband and wife, with but comparatively short intervals when they were apart, save the interval of his World War service, which terminated in May, 1919; by there being born to them three children in addition to the child in question, and by his testimony that he had no knowledge of her ever having procured a divorce from him; and by testimony showing the fact to be that their continued relation and knowledge of each other's whereabouts was such that it was practically impossible for her to have obtained a divorce from him without his knowledge.

We are of the opinion that the presumption of the marriage of Bentley to Mrs. Frenger, as Margarite Kendall, being a legal marriage, is clearly overcome by the proof of the legal marriage of Frenger to Mrs. Frenger in 1917, and the continued existence of that marriage relation up to the time of her death. Our decision in *In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684, supports this conclusion. Observations made in our recent decision in *Shaw v. Prudential Insurance Co., ante* p. 43, 290 Pac. 694, support this conclusion,

though in that case there was involved a presumption of death. Our decisions in *Summerville v. Summerville,* 31 Wash. 411, 72 Pac. 84, *Thomas v. Thomas,* 53 Wash. 297, 101 Pac. 865, and *Weatherall v. Weatherall,* 56 Wash. 344, 105 Pac. 822, also lend support to our conclusion, though in each of those cases there was involved a presumption that the marriage in question had been legally solemnized, rather than a presumption of the continuation of such marriage relation. See, also: *Smith v. Fuller,* 138 Iowa 91, 115 N. W. 912, 16 L. R. A. (N. S.) 98, and note.

■ In the marriage relation legally existing between Frenger and Mrs. Frenger at the time of the conception and birth of the child in question, we have the strong presumption that he is the father of the child. 3 R. C. L. 727; *Cross v. Cross,* 3 Paige Ch. (N. Y.) 139, 23 Am. Dec. 778; *Goss v. Froman,* 89 Ky. 318, 12 S. W. 387, 8 L. R. A. 102, and note; *Scanlon v. Walshe,* 81 Md. 118, 31 Atl. 118; *Canaan v. Avery,* 72 N. H. 591, 58 Atl. 509; *Powell v. State ex rel. Fowler,* 84 Ohio St. 165, 95 N. E. 660, 36 L. R. A. (N. S.) 225, and note.

In the case before us, we have something more than this presumption in support of Frenger's claim of parentage of the child. He and Mrs. Frenger were at the Spokane home for a period of at least from July 2 to July 9, 1926. The child was born to her April 10, 1927. According to the testimony of an experienced physician, the child was in all probability conceived between July 1 and 7, 1926, allowing 280 days for the period of gestation preceding the date of its birth. These considerations clearly establish the right of Frenger to be adjudged the father of the child.

■ Was the divorce decree rendered by the Idaho court an adjudication as against Frenger that he is

not the father of the child? Frenger was not a party to that divorce action, but it is contended in behalf of Bentley that he was bound by that decree as an adjudication of the parentage of the child as against him because he furnished Mrs. Frenger money to aid her in freeing herself from her alliance with Bentley. The following of our decisions are cited in support of this contention: *Douthitt v. MacCulsky,* 11 Wash. 601, 40 Pac. 186; *Shoemake v. Finlayson,* 22 Wash. 12, 60 Pac. 50; *Masterson v. Union Bank & Trust Co.,* 86 Wash. 560, 150 Pac. 1126, L. R. A. 1918 A 531; *Curtis Studio v. Lennes,* 121 Wash. 32, 208 Pac. 79.

In each of these cases, the party sought to be charged as being bound by the judgment in question was not only directly interested in the outcome of the action, but took active part in the prosecution or defense of the action. Frenger did nothing of the kind in the divorce proceeding. He but furnished Mrs. Frenger money to aid her in taking such legal steps as might be necessary to free her from her alliance with Bentley. It is true he suggested to her that she procure a divorce from Bentley, but, at the same time, he made it plain to her that he regarded her marriage with Bentley as void. Manifestly, if he used the word "divorce," he did so without thought of any distinction between a divorce and an annulment proceeding; or, indeed, without any serious thought as to what the nature of her proceeding might be. He was not present at any time during the divorce proceeding, nor did he employ counsel nor advise with counsel having anything to do with the divorce proceeding. We think it cannot be said that he was bound by any adjudication of the court rendered therein touching the question of his parentage of the child. Indeed, the divorce decree merely assumes, rather than decides, as a controverted question, that the child is the child of

Bentley and Mrs. Frenger, naming her as Mrs. Bentley.

There is nothing in this record indicating that, upon Frenger's furnishing Mrs. Frenger money to aid her in instituting legal proceedings looking to freeing herself from Bentley, he had the slightest thought that his parentage of the child would be drawn in question or adjudicated in such proceeding. We conclude that that divorce decree does not adjudicate the parentage of the child in the sense that such adjudication would be binding upon Frenger.

The judgment is affirmed.

MITCHELL, C. J., BEALS, MILLARD, and TOLMAN, JJ., concur.

[1] Reported in 291 Pac. 1109.