## In re DAVIS' ESTATE.
## DAVIS, Adm'x, et al. v. DAVIS.

No. 22810.   Oct. 2, 1934.

Ben F. Williams, C. T. Lane, Homer Cowen, and T. R. Benedum, for plaintiffs in error.

Grim & Grim, for defendant in error.

PER CURIAM. R. S. Davis died, intestate, in Cleveland county, March 18, 1928. On March 22, 1928, Flora B. Davis, his surviving widow, filed her petition in the county court of Cleveland, praying that she be appointed administratrix of the estate of her said deceased husband.

On February 13, 1929, W. A. Davis, who will be hereinafter referred to as "plaintiff," filed his petition in said court, alleging that he was a son and heir of said R. S. Davis, deceased, and praying that he be adjudged an heir and that his proportionate part of the estate be distributed to him.

On March 1, 1930, judgment was rendered in the county court in his favor, and an appeal was taken to the district court of Cleveland county, where, on May 1, 1931, judgment was again rendered in his favor, from which latter judgment this appeal is prosecuted. The other parties to this proceeding will be referred to as "defendants."

The only controversy in this case is whether plaintiff, W. A. Davis, is the son of R. S. Davis, deceased, and whether he was born March 5, 1893.

The evidence shows that R. S. Davis and Etta Basham were married on January 19, 1891, in Cleveland county, and lived together as husband and wife until the latter part of August, 1892, at which time they separated and Etta Davis returned to the home of her parents near Lexington, Okla. W. A. Davis was born March 5, 1893.

Sometime in March, 1892, the parties moved to Norman, Okla., and Davis ran a barber shop, and a barber by the name of Jim Wilkins worked for him. On September 13, 1892, R. S. Davis was granted a divorce from Etta Davis in the probate court of Cleveland county. After the divorce was granted, Davis continued to live in Norman, working at his trade as a barber, and subsequently entered politics and was elected county treasurer of Cleveland county, holding that office for about five years.

Defendants contend that R. S. Davis separated from his wife, Etta Davis, in the spring of 1892, and went to Navarro county, Tex., where he made a crop, and returned to Cleveland county in order to obtain a divorce. Certain witnesses who lived in Texas testified that Davis came to Navarro county in the spring of 1892, and remained there until he returned to Oklahoma just prior to obtaining the divorce. An equal number of witnesses, including a brother and a sister of R. S. Davis, who lived in Cleveland county, testified that Davis and his wife, Etta Davis, lived in Norman from some time in March, 1892, until the latter part of August of that year, when they separated. Some of these witnesses visited in the home of the Davises, and others saw them at the home of Mrs. Davis' parents near Lexington, talked with them, and knew that they were living together as husband and wife during that period. Davis knew that his wife was pregnant when they separated in August, 1892, and went with her to a store and bought goods for her to make clothes for the baby, and on three different occasions after the child was born gave her money to buy clothes. He also offered to make further contributions for the support and maintenance of plaintiff, but plaintiff's grandparents would not permit him to do so. Deceased, R. S. Davis, saw plaintiff several times after his birth, and on a number of occasions held him in his arms.

It is further contended that plaintiff, W. A. Davis, was not born March 5, 1893, but was born March 5, 1894, and in support of this contention the affidavit of plaintiff, made at the time he enlisted in the United States Army on June 21, 1919, is relied upon, and it is contended that plaintiff is bound by the statements made in the affidavit and cannot be heard to say that he was born on a date different than that shown in the affidavit. In support of this contention certain authorities are cited, but an examination thereof shows that the former contradictory statements relied upon were made in some judicial proceedings, and the authorities are, therefore, not applicable to the situation here presented.

The statement in the affidavit, being extra-

judicial, is not conclusive, but is open to rebuttal or explanation. The weight of the evidence is that plaintiff was born March 5, 1893. In fact, the only evidence as to his being born March 5, 1894, is the affidavit mentioned. In Nichols' Applied Evidence, vol. 1, page 399, it is said:

"Extrajudicial admissions of a party are not conclusive."

In Jones on Evidence, vol. 2, page 624, it is said:

"It is hardly necessary to add that, unless admissions are contractual or unless they constitute an estoppel within some of the rules already stated, they are not conclusive, but are open to rebuttal or explanation, or they may be controlled by higher evidence. * * * This is true even though they are made under oath, although admissions thus solemnly made are evidence of great weight against the declarant, and they throw on him the burden of showing a mistake."

Defendants offered the testimony of one W. N. Elliott, to the effect that in 1901 he employed Jim Wilkins to work with him in his barber shop at Purcell, and that he retained money out of Wilkins' wages and mailed checks drawn on Chickasaw National Bank to Mrs. J. E. Basham, grandmother of plaintiff, to aid in plaintiff's support and education. The checks were not offered in evidence, and none of the bank records showing these payments were produced. Wilkins was working for R. S. Davis in his barber shop at Norman at the time Davis and his wife separated, and was working for him in 1898 and continued to work for him until 1901, when employed by Elliott. No explanation is offered why Wilkins waited eight or ten years before contributing to the support of his alleged child, or why he did not continue to do so. The mother of plaintiff positively denied that Wilkins ever contributed anything to plaintiff's support. All of the other witnesses who would have known anything about the facts, if these statements are true, are dead.

It seems incredible that if Wilkins had seduced the wife of R. S. Davis and wrecked his home, as defendants contend he did, and Davis knew these facts, as he must have known them if defendants' contention be true, he would have continued to employ Wilkins and work side by side with him for a number of years thereafter.

Defendants also offer in evidence certain statements alleged to have been made by R. S. Davis that plaintiff was the son of Jim Wilkins. Other witnesses, equally credible, testify that deceased, R. S. Davis, on various occasions inquired as to the welfare of his former wife, Etta, and the plaintiff, sometimes referring to plaintiff as his boy.

Section 1682, O. S. 1931, reads:

"All children of a woman who has been married, born within ten months after the dissolution of the marriage, are presumed to be legitimate children of that marriage. * * *"

Section 1683, O. S. 1931, reads:

"The presumption of legitimacy can be disputed only by the husband or wife or the descendants of one or both of them. Illegitimacy in such a case may be proved like any other fact."

In Bell v. Territory, 8 Okla. 75, 56 P. 853, the court, in discussing the weight of the evidence necessary to overcome the presumption of legitimacy of a child begotten in wedlock, quoted with approval as stating the correct rule the following language in the case of State v. Romaine, 58 Iowa, 46, 11 N. W. 721, where that court said:

"It appears to us that the true rule adduced from the authorities, as well as from principle, is that a child born in wedlock, whether begotten before or after marriage, is presumed to be the child of the husband, but that such presumption may be rebutted by strong, satisfactory, and conclusive evidence that the husband did not have access to the mother of the child when it was beliving. * * *"

In Bruner et al. v. Engeles et al., 88 Okla. 277, 213 P. 307, this court said:

"In the case of Locust et al. v. Caruthers et al., 23 Okla. 373, 100 P. 520, this court in the fourth and fifth paragraphs of the syllabus held:

"'In controversies involving heirship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living. * * *'

"In Orthwein v. Thomas et al., 13 N. E. 564, the Supreme Court of Illinois held:

"'The presumption that every child is the offspring of a lawful marriage, and that the mother, either by actual marriage or by cohabitation and recognition, was the lawful wife of the father, can only be rebutted by clear proof to the contrary, and disproving every reasonable possibility.'"

The trial court had the benefit of observing the appearance, manner, and conduct of the witnesses while testifying, and their ap-

parent interest or lack of interest in the outcome of the trial, which elements are denied this court in reviewing the proceedings of the trial court. The trial court found in favor of the plaintiff, and after carefully reading the entire record we are of the opinion that the judgment appealed from is not against the clear weight of the evidence, nor that the testimony is of such strong, satisfactory, and conclusive character as to overthrow the presumption that plaintiff is the legitimate son of R. S. Davis, deceased, and his wife, Etta Davis. On the contrary, we think the weight of the evidence supports the findings of the trial court.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Summers Hardy, J. A. Duff, and John Ladner in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Summers Hardy and approved by J. A. Duff and John Ladner, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.