**JACKSON et al. v. JACKSON et al.**

No. 27828.   Feb. 8, 1938.

Lee & Allen and Finney & Cook, for plaintiffs in error.

Sprague & Childers and Bascom Coker, for defendants in error.

RILEY, J. This action to determine heirs of Semean Jackson, deceased, was commenced in the county court of McCurtain county by plaintiffs in error, Sissie Jackson for herself, and Vinita Agnes Jackson, a minor, by Sissie Jackson, her mother, as next friend and legal guardian, against Semean Jackson, Jr., and Vera Bell Jackson, minors, and the unknown heirs, if any, of Semean Jackson, deceased.

Sissie Jackson claims to be the widow of Semean Jackson, deceased. The claim on behalf of Vinita Agnes Jackson is that she is a child of Semean Jackson, deceased. Semean Jackson, Jr., and Vera Bell Jackson are conceded to be and are the children of Semean Jackson, deceased, and Sissie Jackson.

Hearing in the county court resulted in a judgment in favor of plaintiffs. Appeal was taken to the district court, resulting in a judgment declaring Semean Jackson, Jr., and Vera Bell Jackson as the only heirs of Semean Jackson, deceased.

From this judgment Sissie and Vinita Agnes appeal. Since the appeal was perfected, Semean Jackson, Jr., died and the cause as to his interest has been revived in the name of Vera Bell Jackson.

Semean Jackson had allotted to him as such Choctaw Indian, land in McCurtain county as his homestead allotment and other land in Carter county as his surplus allotment. Semean and Sissie were married in 1920. Of this marriage it is conceded six children were born. Four of the children died long before this controversy arose. The two living were Semean, Jr., and Vera Bell. The home of the Jacksons until about December, 1930, was near Bethel in McCurtain county. About the latter date Semean and Sissie with their two children moved to Idabel. Differences arose between Semean and Sissie about February 14, 1931. On the next day Sissie filed a suit against Semean for divorce, alimony, and a division of property, resulting September 4, 1931, in a decree of divorce without alimony or division of property. About January 20, 1932, before the decree of divorce would become absolute, Semean Jackson died in McCurtain county.

Barnett v. Frederick, 33 Okla. 49, 124 P. 57. The noneffectiveness of the divorce decree applies only to appeals and remarriage rights. On April 17, 1932, Sissie Jackson gave birth to a child, Vinita Agnes Jackson.

Plaintiff in error, admitting the decree of divorce, claims that about November, 1931, she and Semean Jackson agreed to and did resume the marital relation and consummated a common-law marriage so that from that time to the death of Semean she was his lawful wife, and that she is therefore his widow, and as such she claims the right to participate in his estate as his widow.

The claim of Sissie is resisted, and this, of course, is based upon a denial of the resumption of the marital relation between Sissie and Semean after the decree of divorce was granted and a denial that a common-law marriage was ever consummated.

The claim as to Vinita Agnes is that she is a child and heir of Semean Jackson, and is entitled to share in his estate on equal terms with the other two children.

The claim of Vinita Agnes is resisted upon the sole ground that she is not the child of Semean Jackson.

We consider first the question presented as to the paternity of Vinita Agnes Jackson.

It is, and must be, conceded that Sissie, the mother of Vinita Agnes Jackson, was the wife of Semean Jackson at the time Vinita Agnes was conceived.

Section 1682, O. S. 1931, provides:

"All children of a woman who has been married, born within ten months after the dissolution of the marriage, are presumed to be legitimate children of that marriage. A child born before wedlock becomes legitimate by the subsequent marriage of its parents."

Section 1683, O. S. 1931, provides:

"The presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them. Illegitimacy in such a case may be proved like any other fact."

The divorce of husband and wife prior to the birth of a child does not destroy the presumption of its legitimacy if it were begotten before date of the decree of divorce. Here, however, the parents were separated and the action for divorce was commenced more than four months before the child, according to the laws of nature, must have been conceived. But this fact, as we view the law, does not of necessity destroy the presumption of legitimacy. It is now quite generally held that the presumption of legitimacy as is provided in section 1682, supra, may be overcome by evidence of such facts and circumstances as are sufficient to prove to the satisfaction of those who are to decide the question that copulation did not take place between the husband and wife at any time when by such copulation the husband could, by the laws of nature, be the father of the child whose legitimacy is in question.

Excepting a difference in race or color between the child and the husband of its mother, evidence satisfactorily showing any one of the following facts is sufficient to overcome the presumption of legitimacy:

1. That the husband was impotent; or

2. That he was entirely absent from his wife during the entire period within which the child must have been begotten, or

3. That he was present with his wife only "under circumstances 'such as afford clear and satisfactory proof that there was no sexual intercourse.'" In re Walker's Estate (Cal.) 181 P. 792.

In the instant case there is no claim or suggestion of impotency of the husband. There is likewise no substantial claim that the husband was entirely absent from the wife's presence so as to afford no opportunity for copulation during the entire period within which the child could have been conceived.

Therefore, the judgment of the trial court in so far as it affects the status of Vinita Agnes Jackson can be sustained only upon the theory that the evidence was sufficient to establish presence of the husband with the wife only "under circumstances as afford clear and satisfactory proof that there was no sexual intercourse." Or, as said by Justice Battle in the case of Morris v. Davies, 3 C. & P. 215, 14 E. C. L. 275:

"It matters not that the general camp, pioneers and all, had tasted her sweet body, because the law fixes the child to be the child of the husband."

At least this presumption is to be resolved affirmatively in view of the statutes and facts herein disclosed, and in the absence of contrary scientific proof.

Semean Jackson, being a full-blood restricted Choctaw Indian, had a considerable sum of money held for him by the Interior Department or Indian Agency at Muskogee. It also clearly appears from the uncontradicted evidence that for sometime prior to the separation of Semean and Sissie checks were sent to Semean and Sissie for his support and the support of Sissie and the children; that checks for something like

$200 payable to Semean were mailed to him at Bethel about once each month. A check made payable to Semean was also mailed to Sissie once each month. One would be mailed about the first of the month and the other about the 15th. After Semean and Sissie separated about February 14, 1931, Semean went to Hugo, where his mother lived. He stayed there most of the time at least until after the divorce case was tried, September 4th. But each month he would go to Bethel, near where Sissie was living, to get his checks from the post office. Each month when Sissie would get a check for herself it would be necessary for her to go to Hugo and get Semean to endorse the check or for him to go to her place for that purpose. That this was done each month is not disputed.

It is also in evidence, and not contradicted, that on one occasion during the first part of August, 1931, Semean was injured in some way and was taken to the hospital at Paris, Tex., and that Sissie went to see him there and took one of the children for medical attention. It clearly appears, then, that Semean was not entirely absent from, that is, not in the presence of, Sissie during the period of possible conception. On the other hand, it affirmatively appears that the husband and wife were together at least twice during the period of possible conception, if we are to take 280 days, the usually accepted normal period of gestation; ten months as the maximum period as indicated by section 1682, supra, and a like number of days less than ten months as the minimum period. The child having been born April 17, 1932, taking the generally accepted normal period of gestation, she would have been conceived about July 8, 1931, and allowing a variation of not more than 20 days either way, the conception may have been at any time between June 28, and July 28, 1931. Sissie testified positively that she went to Hugo about the 15th day of July, 1931, to get Semean to endorse a check for her. In this she was corroborated by the testimony of Semean's mother, and of one other witness. The testimony of Semean's mother is somewhat weakened by a showing that she had testified otherwise at a hearing held some two or three years before when the question of appointmnt of an administrator was before the court at Hugo. Again it is shown by uncontradicted evidence that Semean was at the place where Sissie was living at least once during the period of possible conception.

Unquestionably the husband and wife were together under conditions such as to render possible copulation during such period.

The vital question to be determined is whether there was sexual intercourse between the husband and wife during such period. If it be admitted or shown by positive and uncontradicted evidence that there was copulation, then the presumption of legitimacy is resolved affirmatively, however strong the evidence may be of illicit intercourse between the wife and any man other than the husband. In such cases the law will not permit guessing or weighing probabilities as to the fatherhood of the child. 7 Am. Jurisprudence, 637.

In this case the mother testified positively that on one occasion when she and Semean were together about July 15, 1931, at the home of his mother, they occupied the same bed. She testified positively she had sexual intercourse with her husband a number of times, about the 1st and 15th of each month. On the 1st of each month, when he went from Hugo to Bethel to get his check, and on or about the 15th of each month, when she would get the check for herself, when Semean would come to her home or she would go to his mother's place in Hugo to get him to endorse the check.

As to Sissie and Semean occupying the same room and the same bed while Sissie was in Hugo, Sissie is corroborated by the testimony of Semean's mother. But, as stated before, her testimony on this question is weakened somewhat by a showing that she had testified the other way at a former hearing. But the presence of Sissie at the home of Semean's mother about July 15, 1931, is conclusively proven and there is no evidence to the contrary.

The testimony of Sissie and Semean's mother as to what took place at Hugo, about July 15, 1931, is without substantial contradiction. The record therefore discloses unquestionable presence together of the husband and wife during the period of possible conception, with positive and but slightly contradicted evidence of copulation.

In general, proof of access between husband and wife during period when a child must have been begotten is conclusive as to its legitimacy. 7 Am. Jurisprudence, 657.

The word "access," as there used, means sexual intercourse and not merely presence together of the husband and wife under circumstances which afford opportunity for such intercourse.

It has been held that where opportunity for access between husband and wife during

the period in which a child must have been begotten, access will be conclusively presumed in favor of legitimacy. Corn v. Shepherd, 6 Bin. (Pa.) 283, 6 Am. Dec. 449; State v. Shaw, 89 Vt. 121, 94 Atl. 434.

This is said to be the minority rule, and that the great weight of authority is to the effect that where opportunity is shown, the presumption of legitimacy, while very strong, is not conclusive, and may be rebutted by showing that intercourse did not in fact take place. 7 Am. Jurisprudence, 658.

This is particularly true where the husband and the wife were at the time living apart. Id.

This brings us to a discussion of the question of degree of proof necessary to rebut the presumption of legitimacy under such circumstances.

In this case there is a mass of evidence tending strongly if not conclusively to show illicit relation between Sissie Jackson and a man other than the husband during the period in which the child in question must have been conceived. Suit for divorce was pending during that period. The wife was not only suing for divorce, but for alimony and a division of property. The divorce appears to have been hotly contested especially on the question of alimony and division of property. In the final decree a divorce was granted to the wife, but alimony and property division were both denied.

All these facts are, of course, to be considered in arriving at the solution of the ultimate fact of the paternity of the child.

The rule as to the degree of proof necessary to overcome the presumption of legitimacy is stated in Re Davis' Estate, 169 Okla. 133, 36 P.2d 471, as follows:

"The presumption of legitimacy declared by section 1683, O. S. 1931, can be disputed only by the husband or wife or the descendant of one or both of them. The testimony to overthrow such presumption must be strong, satisfactory, and conclusive evidence that the husband did not have access to the mother of the child when it was begotten, and must furnish clear proof to the contrary, disproving every reasonable possibility of such access."

The word "access" is there apparently used in the sense of opportunity for rather than of actual intercourse. But in that case the husband and wife were not separated and living apart at the time the child must have been begotten.

In this case there is much difficulty in applying the evidence of misconduct of the mother and evidence of illicit relation with the man other than the husband to the question of paternity of the child.

If this court, on appeal, is to consider and weigh the evidence in this kind of a case, and that is apparently the rule followed, then from the record as a whole it may be said that the evidence points with an equal degree of certainty to either man as the father of Vinita Agnes Jackson.

In such case the law requires that the doubt be resolved in favor of legitimacy rather than illegitimacy.

We cannot say, as a matter of law, that the evidence is so strong and satisfactory, not to say conclusive, as to show that the husband did not copulate with his wife, the mother of the child, at or near the time it was begotten, or that there is clear proof disproving every reasonable possibility of such intercourse.

Under such circumstances, the judgment of the trial court cannot be sustained in so far as it affects the rights of the child Vinita Agnes Jackson.

A different question is presented as to the rights of plaintiff, Sissie Jackson. Her right to share in the estate of Semean Jackson depends entirely upon whether she became the wife of Semean Jackson after the decree of divorce was entered on September 4, 1931. She claims a common-law marriage.

That a valid common-law marriage may result from an actual agreement of the parties, entered into in good faith, is conceded. It is also conceded that a common-law marriage may be consummated between a divorced husband and wife before the expiration of six months after their divorce. The burden is upon the person relying upon such a marriage to establish the same.

There is some evidence in this case tending directly to prove such marriage. There is evidence of facts and circumstances which tend just as strongly the other way.

The trial court had the witnesses before him where he could observe their demeanor on the witness stand, and upon consideration of all the evidence, facts, and circumstances in evidence found against the marriage.

Many facts and circumstances are in evidence tending strongly to disprove the so-called common-law marriage.

It may be observed that Sissie Jackson testified that she repeatedly refused to go back to her husband and resume the marriage relation with him down to about November 24, 1931. This was less than two months before the death of Semean. The

evidence is not clear that they ever lived together during those two months. In the decree of divorce the custody of the two children was taken from both parents. They were placed in the custody of the Sister Superior in charge of St. Agnes Academy at Antlers subject to further order of the court. It is in evidence that orders were obtained for the children to go to their mother during Thanksgiving and Christmas holidays. No application was ever made to return their custody to the father and mother.

One objection that Sissie had to returning to live with Semean was that Semean "had another woman." She testified that she would not agree to return to him unless he promised to "give the other woman up." That he promised to do so. But the record shows that Semean took sick and died away from the home of Sissie; that when he took sick, instead of sending for Sissie to attend him, he sent for the "other woman"; that the "other woman" cared for and nursed him during his last sickness, and although in the same vicinity. Sissie did not know of Semean's sickness until after his death.

Many other circumstances are in evidence tending to show that there was in fact no resumption of the marriage relation.

We cannot say that the finding and judgment of the trial court is not in accord with the preponderance of the evidence. Certainly it is not against the clear weight of the evidence on that question.

The judgment of the trial court is reversed in so far as it adjudges Vinita Agnes Jackson not to be a child and heir of Semean Jackson, deceased. The judgment is modified adjudging the sole and only heirs of Semean Jackson, deceased, at the time of his death to be Semean Jackson, Jr., Vera Bell Jackson, and Vinita Agnes Jackson. The judgment in so far as it affects the claim of Sissie Jackson is affirmed.

BAYLESS. V. C. J., and WELCH, CORN, GIBSON. HURST, and DAVISON, JJ., concur. OSBORN, C. J., and PHELPS, J., absent.