440

### In re ASBURY'S ESTATE.
### ASBURY v. McQUEEN et al.

No. 30725. March 30, 1943.

Rehearing Denied May 11, 1943.

*136 P. 2d 913.*

W. A. Barnett, of Okmulgee, and A. C. Kidd, of Wewoka, for plaintiff in error.

James W. Rodgers, of Holdenville, for defendant in error Nancy Wolf.

Charles E. Grounds, of Seminole, for defendant in error Etta Foster.

Warren & Warren, of Holdenville, for other defendants in error.

RILEY, J. This is an appeal from an order approving the final account of an executor and a decree of distribution in the estate of Wesley Asbury, deceased. Wesley Asbury was a full-blood enrolled member of the Creek Tribe of Indians. He died a resident of Hughes county September 12, 1937, and his will was admitted to probate without objections October 13, 1937. On April 25, 1939, final account and petition for distribution of assets of the estate was filed. After notice, and on May 24, 1939, Annie Asbury sought to contest the will and filed her petition seeking a distributive share of the estate, as provided in Title 84, sec. 132, O. S. 1941. She pleaded that she was a daughter of Wesley Asbury and Louila Asbury, and was born on February 3, 1920. Spaniard et al. v. Tantom et al., 131 Okla. 75, 267 P. 623; Riley et al. v. Collier et al., 111 Okla. 130, 238 P. 491; and Courtney et al. v. Daniel et al., 124 Okla. 46, 253 P. 990.

Wesley Asbury's will devised to Lowina Asbury, his second wife, 80 acres of his allotment and bequeathed to her his personal property; it devised to his three sisters the remaining 80 acres of his allotment, and failed to provide or mention the claimant, Annie Asbury.

The claim of Annie Asbury was denied under a finding that she was not the child of the deceased testator, Wesley Asbury. Annie Asbury appealed to the district court, where a like finding and judgment was entered, and she has perfected her appeal to this court.

The cause was revived in the district court as to the widow, Lowina Asbury, who died in February, 1940, and it was revived in this court as to Mary McQueen, who died September 10, 1942.

The sole question involved is whether plaintiff is the child of Wesley Asbury, the deceased testator. Wesley Asbury and Louila King entered into a ceremonial marriage on May 5, 1919. A license issued and returned showed that fact beyond doubt. After the marriage, Wesley Asbury and his wife lived together at the home of Nellie White for one week and then moved to another home, where they cohabited for a time, the duration of which is in dispute, varying, according to the testimony,

as much as five months. The positive evidence is that the child, Annie Asbury, was born February 3, 1920; and while there are in evidence circumstances tending to prove that she might have been born at an earlier date, the preponderance of testimony supports the positive evidence. Her mother so testified, as did her maternal grandfather, Peter King. Annie Asbury testified that she had always been told that was the date of her birth. There being no substantial evidence to the contrary, it must be taken as conclusively established that such was the date of her birth. Accepting that as the date of her birth, it was 274 days after the date of the marriage heretofore stated and within six days of the generally accepted period of gestation, 280 days. Webster's New International Dictionary; State ex rel. Bentley v. Frenger, 158 Wash. 683, 291 P. 1089.

On March 3, 1920, Wesley Asbury filed in the district court of Hughes county a petition for divorce against Louila Asbury, and on January 10, 1921, he was granted an uncontested decree of divorce based upon the ground that Louila was pregnant by another man at the time of marriage. Several witnesses testified that they talked with Louila shortly before and after her marriage; that at the time of the marriage she showed to be about four months advanced in pregnancy; that she admitted she was pregnant by a man other than Wesley Asbury; but all of this evidence was positively denied by Louila; and such evidence is inherently improbable and of necessity must be taken as untrue in view of the positive evidence that Annie Asbury was born to Louila February 3, 1920. The unreliability of this evidence is shown by the testimony of Mandy Narcomey, who testified that at the time of the marriage she was the wife of Peter King, and that Louila had lived in the home with her and her husband before and after her marriage. On cross-examination, Mandy Narcomey testified that she was separated and divorced from Peter King 23 years before the date of trial, which would have been May 1, 1918, more than a year prior to the date Louila was married to Wesley Asbury. As a consequence, she would not have been present and living in the home of Peter King according to the testimony she gave in direct examination.

Title 10, sec. 1, O. S. 1941, provides:

"All children born in wedlock are presumed to be legitimate."

The marriage heretofore considered was not dissolved until long after the birth of Annie Asbury. Consequently she was born in lawful wedlock. The authorities are not in harmony with regard to the proof necessary to rebut the presumption of legitimacy attributed to a child born in lawful wedlock. It is said in 7 Am. Juris. 656, par. 45, that:

" . . . The declarations of a husband that a child born in wedlock is not his are not sufficient to prove its illegitimacy, notwithstanding it was born only three months after the marriage and a separation between his wife and himself . . . "

In Bowles v. Bingham (Va.) 2 Munf. 442, 5 Am. Dec. 497, it is said that where a distributive share of a putative father's estate had been denied an infant on the ground that she was not his child, and articles of separation agreement had been introduced and it was shown that the child's birth occurred three months after marriage between her mother and a putative father, the child ". . . may be considered as having been begotten as well as born during wedlock," and the declarations on the part of the father "may have been induced either by a feverish and unwarrantable jealousy on his part, by a belief of a simultaneous and concurrent access on the part of other men, or by other circumstances equally uncertain and equivocal."

Likewise it was said:

"With respect to procreations during marriage the presumption is, that all persons born during marriage are legitimate. This presumption can be destroyed only by contrary proof, demon-

strating that the child is not the child of the husband; which again can only be by showing that from his continued absence from his wife, at or about the time of procreation, or from the impotency of his body, it is impossible that he should be the father."

It was there stated that even in the case of a divorce, as herein established, the degree of proof to establish legitimacy of such a child "only tolerates an inquiry going to show that the husband could by no possibility have been the father of the child, it will certainly not relax the rule in relation to a procreation before the marriage, to cases in which the husband has entered into a matrimonial engagement with his wife, not only with full knowledge of the rule aforesaid, but also (in general) with a knowledge of her particular situation in relation to her pregnancy or otherwise. Our law wisely throws a veil over acts of incontinency in such cases, and certainly will not, without necessity, and in a spirit of departure from the wise rule of public economy before mentioned, inundate our courts with indecent inquiries, whether this or that man, whether husband or another, committed a given act of immorality and fornication."

Therein it was held that the evidence, such as in the instant case, did not repel possibility of the infant having been begotten by the putative father and so the child was held to be legitimate and entitled to a distributive share of her father's estate.

In Jackson v. Jackson et al., 182 Okla. 74, 76 P. 2d 1062, it was held that where a husband and wife cohabited during a period of possible conception, the presumption of legitimacy of a child conceived during such period was indulged and it was held that such presumption could be overcome only by evidence that was strong and satisfactory.

The uncontradicted evidence in the case at bar establishes a cohabitation between husband and wife, affording an opportunity and probability of conception of Annie Asbury during that period. Therefore, to overcome the presumption of her legitimacy, the evidence must be strong and convincing. There is no such proof contained in this record.

In Bentley v. Frenger, 158 Wash. 683, 291 P. 1089, such a presumption was indulged to establish the paternity of a child, and in Wright, Adm'r, v. Hicks, 15 Ga. 160, it was said that:

"Nothing short of impossibility in such case should impugn the legitimacy of the offspring."

The appellant contends that under Title 10, sec. 3, O. S. 1941, appellees will not be heard to dispute her legitimacy by reason of the provision that "the presumption of legitimacy can be disputed only by husband or wife or the descendant of one or both of them." But in view of the conclusion we have reached, we deem it unnecessary to discuss that matter. The evidence adduced is wholly insufficient to overcome the presumption that plaintiff is the child of Wesley Asbury, deceased testator.

Judgment reversed, with directions to enter judgment in favor of plaintiff.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, and HURST, JJ., concur. WELCH, DAVISON, and ARNOLD, JJ., dissent.

---

DAVISON, J. (dissenting). I disagree with the conclusion announced by my associates in this case.

In my judgment the proof introduced in the trial court for the purpose of showing that the woman who calls herself Annie Asbury is not the daughter of Wesley Asbury, deceased, is sufficient, when viewed in the light of its acceptance by the trial court, to overcome the presumption of legitimacy upon which the conclusion announced in the majority opinion is based.

As stated in the majority opinion the sole ultimate question is whether the plaintiff is the child of Wesley Asbury.

The presumption of legitimacy, which in addition to its common-law existence is recognized by statute in this jurisdiction (10 O. S. 1941 §§ 1, 2, and 3), is of importance only for its probative force in connection with or in opposition to the proof introduced.

The foregoing sections of the statute were adopted at an early date by our Territorial Legislature. It is worthy of note that the presumption of legitimacy, although a strong one, under all of the decisions is not conclusive in nature, nor has our Legislature seen fit to demand any particular character of proof to overcome the presumption. On the contrary, it is provided in part by section 3, supra, that "illegitimacy in such a case may be proved like any other fact."

At an early date this court, in Bell v. Territory, 8 Okla. 75, 56 P. 853, noted the discrepancy in judicial expressions as to the strength of the presumption and adopted a "middle ground" to test the sufficiency of evidence to overcome it. The test as adopted is something more than a mere preponderance of the evidence (the usual test applied to the plaintiff's evidence in a civil action), but less than proof necessary to satisfy beyond a reasonable doubt (the standard required in the prosecution of criminal actions).

It is well to remember that the requirement is somewhere between the two extremes above noted. Otherwise, those disposed to add strength to the presumption may make the rule so strong as to require that illegitimacy be proved by proof of nonaccess at the time of conception beyond a reasonable doubt. In my opinion, the majority opinion requires this degree of proof.

The basic decision in this jurisdiction, Bell v. Territory, supra, expresses our view in the following language:

". . . The Supreme Court of Massachusetts, in Phillips v. Allen, 2 Allen, 453, adopted the rule that nonaccess must be proved beyond a reasonable doubt. Michigan has followed the same rule. Egbert v. Greenwalt, 44 Mich. 245, 6 N. W. 654. In Wright v. Hicks, 56 Am. Dec. 451, the Georgia court adopts the rule that a preponderance is sufficient. But we think the Iowa Supreme Court has announced the better and safer rule, and one which does not go to the extreme either of strictness or liberality. In the case of State v. Romaine, 58 Iowa, 46, 11 N. W. 721, that court said: 'It appears to us that the true rule adduced from the authorities, as well as from principle, is that a child born in wedlock, whether begotten before or after marriage, is presumed to be the child of the husband, but that such presumption may be rebutted by strong, satisfactory, and conclusive evidence that the husband did not have access to the mother of the child when it was begotten. . . . The jury should have been instructed that the presumption of legitimacy was so strong that it could only be overcome by distinct, strong, satisfactory, and conclusive evidence to the contrary. . . . '".

So much for the strength of the presumption of legitimacy, which I agree is a strong one, but which under the legislative mandate contained in section 3, supra, may be disputed by proof of illegitimacy established like any other fact. Under judicial precedent the refutation of the presumption need not establish the illegitimacy by proof of nonaccess at the time of conception beyond a reasonable doubt.

The foregoing rules and tests are primarily for the guidance of trial courts and presumably cognizance thereof was taken by the trial court.

In all cases wherein appellate jurisdiction is exercised this court recognizes that the trial tribunal was in a better position to weigh the evidence and determine the credibility of the witnesses than we are. We must judge from the cold, unexpressive record without the trial court's advantage of observing the demeanor and conduct of the witnesses. Thus whatever might have been added to the value of evidence by such observance is presumed in support of the trial court's judgment to have existed, and, similarly, con-

tradictory evidence fair and reasonable on the face of the record may have been properly discarded in the trial court upon considerations not apparent in this court.

With these governing considerations in mind, let us inspect the evidence reflected by the record before us, especially that portion which supports the judgment of the trial court. Incidentally, two trial courts have passed on the question of illegitimacy and both on consideration of the testimony reflected by the record now before us have declared the plaintiff in error illegitimate.

On the 5th day of May, 1919, Wesley Asbury and Louila King became man and wife by virtue of a ceremonial marriage. According to the application for the marriage license the groom was 45 years old and the bride only 19.

Sometime subsequent to the marriage but during the record period thereof the plaintiff in error herein was born. She was the daughter of Louila. Was she the child of Wesley? Wesley was convinced she was not.

On March 3, 1920, approximately ten months after the marriage ceremony, Wesley filed an action for divorce in the district court of Hughes county in which he sought and was subsequently decreed a divorce upon the sole and only grounds that Louila was at the time of the marriage pregnant by another man. The divorce was granted on January 10, 1921. It was based upon personal service of summons on the defendant wife.

While the marriage lasted some ten months before a dissolution thereof was sought, the record reflects that the parties separated soon after the ceremony and did not thereafter cohabit as man and wife, if they ever did.

It is reflected by the testimony of the witnesses produced that at the time of or immediately before the marriage to the decedent herein, the mother, Louila, had an emotional attachment for another man who was married. The other man's wife discovered a letter in his possession disclosing the tendency and protested the matter. The protest seems to have been successful, since the offended spouse continued to live with her husband, and Louila, being then encouraged by her father, who said it was to keep her from going wrong, married Wesley.

Wesley, according to the testimony, soon discovered his bride was pregnant by another man and took her home to her father in about a week or ten days, stating his reason for doing so at the time.

During the week they lived in the same house, but others were present and some testimony supports the view that they did not cohabit as man and wife at all. If the presence of the two in the same house establishes access, it does not establish such access at the time the child was begotten.

There is evidence in the record to the effect that the mother's pregnancy had advanced to a stage that it was apparent to third parties at about the time of the marriage or shortly thereafter. While the testimony of the defendants in error does not fix a definite date of birth of plaintiff in error, it indicates and supports the view that the birth occurred at a much earlier date than that fixed by plaintiff in error's evidence. A birth certificate was not produced; perhaps none was available.

Wesley Asbury at all times declared he was not the father. The child was not mentioned in his will. Witnesses were produced who said the mother also made declarations to the effect that he was not the father and that the married man previously referred to was. She exhibited pictures of the child to relations of the latter man and declared the child was related to them through him. The other man on at least one occasion admitted the paternity.

As far as the record discloses, Wesley did not see the child during his life. They lived apart a distance of approximately 51 miles.

Most of the testimony reflecting the foregoing facts is either delineated by or corroborated by the testimony of witnesses who have no financial interest in the outcome of the controversy. On the other hand, the plaintiff in error's case is built largely upon the testimony of her mother and her maternal grandfather.

Accepting the testimony of the plaintiff as the trial court did, the gist of this case is this. A middle-aged man married a young woman who had been in love with another man already married. The marriage was sponsored by her father. The groom discovered his bride was pregnant by another. He took her home for a week. He subsequently divorced her because of the pregnancy. He declared to all, and the mother stated to some, that he was not the father of the child. He made no provision for her in his will. The other man admitted his paternity.

The majority opinion holds in effect that presumption of legitimacy is so strong that having made the mistake of marrying a pregnant woman and keeping her in the same house for a week, the bridegroom or his descendants cannot establish illegitimacy the same as any other fact even though he did everything that reasonably might be expected of a man confronted with such a situation.

I apprehend that many men have been convicted of criminal offenses upon evidence judicially declared sufficient to establish their guilt beyond a reasonable doubt when the evidence against them was of less probative force than the evidence herein tending to prove illegitimacy and nonacceess by the father at the time the child was conceived. This court has declared that the evidence need not meet the reasonable doubt test.

There is evidence in the record which would support a decision by the trial court favorable to the appellant. But that evidence was not there accepted.

The question herein was a question of fact. The evidence supports the view that the child was begotten at a time when the deceased did not have access to the mother, and the decision of the trial tribunal and its judgment should be affirmed.

I respectfully dissent.

I am authorized to state that Mr. Justice ARNOLD concurs in the foregoing dissenting view.