WINGET v. WINGET.

No. 33500. Dec. 27, 1949.

*213 P. 2d 288.*

Shilling & Shilling, of Ardmore, for plaintiff in error.

Frederick J. Hoyt, of Oklahoma City, for defendant in error.

HALLEY, J. The parties occupy the same position in this court as they did in the court below, so will be referred to as in the lower court.

In 1941, the defendant was married to a man named Hickey and they lived in or near Bakersfield, Calif. In October of that year, she came to Stonewall, Okla., her old home, for a visit. There she met the plaintiff, who was at that time married. Plaintiff and defendant cohabited from October until December 5, 1941, according to the defendant's testimony. On December 28, 1941, defendant started back to California, and reached there shortly thereafter. She resumed her marital relation with her husband. Some two or three weeks after she returned to California, she discovered that she was pregnant. She continued to live in California with her husband, except for a while in March, 1942, when she visited a sister at Lawton, Okla. Her child, a daughter, was born on August 29, 1942, at a hospital in Bakersfield. Defendant furnished the information for the baby's birth certificate and stated that her husband, James W. Hickey, was the child's father. In 1943 she returned to Oklahoma, and in 1944 she obtained a divorce from her husband in the district court of Oklahoma county. The decree was dated July 19, 1944, and in it was a finding by the trial court that defendant and James W. Hickey had been legally married and to the marriage one child, Emily Jo Hickey, aged two years, had been born. James W. Hickey was given the

right of visitation and required to pay child support. On October 28, 1944, plaintiff and defendant were married at Winfield, Kansas. Plaintiff was then in the service. He made an allotment for the wife and child. The parties lived together for two or three months until plaintiff went overseas for the second time. He returned in November, 1945, and they lived together until January, 1946, when defendant went to California. Defendant testified that plaintiff recognized the child as his.

In May, 1946, plaintiff sued defendant for divorce in the district court of Pontotoc county. Service was had by publication, and a decree of divorce was entered in favor of plaintiff on July 17, 1946. On May 3, 1947, defendant asked that the case be reopened and the decree vacated. She also asked for a divorce and custody of Emily Jo Hickey, who she alleged was a minor child of the parties, and prayed that the plaintiff be required to pay for said child's support. The case was reopened and evidence heard. The trial court refused to vacate the judgment granting a divorce, but found that the parties were the parents of Emily Jo Hickey and required plaintiff to pay $25 a month for the support of the child until further order of the court. Plaintiff has appealed.

To reverse the case, the plaintiff urges four propositions, as follows:

"(1) The judgment and order of the court finding and decreeing that the plaintiff is the father of Emily Jo Hickey, and requiring him to support said child, is not supported by the evidence, but is against the great weight of the evidence and is contrary to and against the law.

"(2) The judgment and decree of the District Court of Oklahoma County in the case of Genevieve Hickey vs. James W. Hickey, adjudging that James W. Hickey is the father of said child, is not subject to collateral attack herein, and the defendant herein is estopped by said judgment to assert that another than the said James W. Hickey is the father of said child.

"(3) The court erred in the admission of incompetent evidence on the part of the defendant, which (a) had the effect of bastardizing her own child born in lawful wedlock, and (b) which had the effect of impeaching and which did impeach a valid judgment of a court of competent jurisdiction.

"(4) The judgment and order is void for uncertainty."

We will confine our discussion here to Proposition 1, which is sufficient to dispose of this appeal.

It is admitted that Emily Jo Hickey was born in lawful wedlock, the child of James W. Hickey and the defendant. Sec. 1, Title 10, O. S. 1941, provides:

"All children born in wedlock are presumed to be legitimate."

The Code of California has an identical provision. The burden rested on the defendant to overcome this presumption. In our opinion, this she failed to do. No medical testimony was offered. Defendant testified as follows:

"Q. Now, after you went back out there to California, you went back along in December, I believe you said? A. Yes. Q. Then where did you and Mr. Hickey live? A. After New Year's when we decided to live together again we lived in Bakersfield. Q. Did you separate at some time? A. Yes, we were separated when I was back here, we had been separated for a month or so. Q. When you went back together how long did you live together at that time? A. We decided to live together and we lived together two or three weeks and I found out that I was pregnant. Q. Did you live together after that time? ? A. I didn't live with him but I lived in his home. Q. Lived in his home? A. Yes."

We think it clear that defendant testified that after New Year's of 1942 she lived with her husband as man and wife and the normal relations were entered into for two or three weeks thereafter until she discovered she was pregnant. It is a matter of common knowledge that the interruption of menstrual periods is indicative of pregnancy, and defendant testified she did

not know she was pregnant until two or three weeks after January 1, 1942. That being the case, it was entirely possible for her husband to be the father of the child, as she admitted sexual relations with him after her return from Oklahoma and before she discovered she was pregnant. No one has testified it was impossible for the husband, James W. Hickey, to be the father of the child. In Re Asbury's Estate, 192 Okla. 440, 136 P. 2d 913, we said that to overcome the presumption of the legitimacy of the child born in wedlock, the evidence must be strong and convincing, and in Re Davis' Estate, 169 Okla. 133, 36 P. 2d 471, the second paragraph of the syllabus was as follows:

"The presumption of legitimacy declared by section 1683, O. S. 1931, can be disputed only by the husband or wife or the descendant of one or both of them. The testimony to overthrow such presumption must be strong, satisfactory, and conclusive evidence that the husband did not have access to the mother of the child when it was begotten, and must furnish clear proof to the contrary, disproving every reasonable possibility of such access."

In the light of these decisions, the case must be reversed.

The judgment of the trial court in determining that the plaintiff, O. K. Winget, is the father of Emily Jo Hickey, is reversed, and the order of the court requiring plaintiff to pay $25 monthly for the support of the child is also reversed, with instructions to dismiss the defendant's motion to vacate judgment for divorce.

DAVISON, C.J., and WELCH, CORN, GIBSON, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur.