Eddy L. SECONDINE, Plaintiff in Error,

v.

Mary Jo Tahsuda SECONDINE, Defendant in Error.

No. 37481.

Supreme Court of Oklahoma.

April 9, 1957.

Rehearing Denied May 14, 1957.

· Hickman & Hickman, Tulsa, for plaintiff in error.

· Hubbell & Eubanks, Walters, for defendant in error.

JOHNSON, Justice.

Eddy· L. Secondine, hereinafter called plaintiff, filed an action against Mary Jo Tahsuda Secondine for divorce. She filed a cross-petition and was granted a divorce with custody of a child. Plaintiff was ordered to pay $50 per month for child support. He appeals from the judgment insofar ·as· it orders payment of child support.

█ Defendant in error moves to dismiss the appeal for the reason that it was not filed within time as provided by 12 O.S.1951 § 1280. We are of the opinion and hold that the time to appeal is controlled by ·the decisions of this court in Montgomery v. Montgomery, 41 Okl. 581, 139 P. 288; Howell v. Howell, 42 Okl. 286, 141 P. 412; Allred v. Allred, 131 Okl. 55, 267 P. 842; and Jupe v. Jupe, 196 Okl. 447, 166 P.2d 769, 770. In Jupe v. Jupe, supra, it is stated:

"In Montgomery v. Montgomery, 41 Okl. 581, 139 P. 288, we held that on an appeal from a decree of divorce in which the property was divided between the parties, the giving of the ten-day notice of appeal was necessary before any question concerning the divorce could be received, but that the order of the trial court dividing the property was separable from the

decree of divorce, and that assignments of error relating to the division of the property would be considered if the appeal was properly perfected under the general provisions of the law relating to appeals. * * * "

The motion to dismiss is therefore denied.

The record discloses that plaintiff and defendant had been acquaintances and associates for an undisclosed period of time prior to November 15, 1954; that on November 15, 1954, defendant was a student at Cameron College located at Lawton, Oklahoma, and plaintiff was a First Lieutenant in the United States Air Force. In answer to a telephone call from plaintiff, defendant went to Tulsa, Oklahoma and stayed with plaintiff, and during this time they had sexual intercourse. The testimony is in conflict as to the exact date in November when this occurred, but it occurred not earlier than the 13th day of November, 1954, and not later than the 18th day of November thereafter. Sometime before the 19th day of March, 1955, defendant discovered that she was pregnant. The plaintiff and defendant met at Reno, Nevada, and were married on said date of March 19, 1955. On September 12, 1955, defendant gave birth to a daughter. On the 24th day of August, 1955, plaintiff filed an action for divorce on the ground that defendant was pregnant by one other than her husband. On the 23rd day of September, 1955, the defendant filed her answer and cross-petition seeking a divorce, custody of the child and child support. The result of the trial is as above stated.

Plaintiff relies on Bell v. Territory, 8 Okl. 75, 56 P. 853, 855, as establishing the proper rule as to the evidence necessary to determine the parentage of a child. That case was reversed for new trial for failure to give an instruction. Therein it is stated:

"* * * At the proper time counsel for defendant requested the court to instruct the jury as follows: 'You are instructed that in a bastardy proceeding the most conclusive evidence of nonaccess on the part of the husband during the period within which the child might have been begotten is required, and that neither the husband nor wife is a competent witness to give evidence of nonaccess so as to bastardize a child, and that in this case, unless you find from the evidence, outside of the evidence of the prosecuting witness, Ida Dillman, conclusive evidence of nonaccess of the husband to her during the time within which, under the evidence in this case, the child might have been begotten, you should acquit the defendant.' This request was refused, and exception saved, and no instruction was given embracing the subject-matter of this request. This request fairly embraces the law as applicable to the issues and evidence in the case, and it was error to refuse it. It has been the well-settled rule, from the earliest times, as appears from the Roman, English and American law writers, that neither husband nor wife will be allowed to give evidence tending to bastardize the offspring of the wife born or begotten during wedlock. * * * "

■ An examination of the testimony discloses plaintiff relied upon the nature of the testimony discredited by this court in the foregoing opinion. Plaintiff also relies on State ex rel. Bentley v. Frenger, 158 Wash. 683, 291 P. 1089, which announced the rule that the ordinary period of gestation is two hundred and eighty days in holding a child born within wedlock to be the child of husband.

10 O.S.1951 § 1, provides:

"All children born in wedlock are presumed to be legitimate."

10 O.S. 1951 § 2, provides:

"All children of a woman who has been married, born within ten months after the dissolution of the marriage

are presumed to be legitimate children of that marriage. A child born before wedlock becomes legitimate by the subsequent marriage of its parent."

10 O.S.1951 § 3, provides:

"The presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them. Illegitimacy in such a case may be proved like any other fact."

In Jackson v. Jackson, 182 Okl. 74, 76 P.2d 1062, 1065, it is stated:

" * * * On the other hand, it affirmatively appears that the husband and wife were together at least twice during the period of possible conception, if we are to take 280 days, the usually accepted normal period of gestation; 10 months as the maximum period as indicated by section 1682, supra, and a like number of days less than 10 months as the minimum period. The child having been born April 17, 1932, taking the generally accepted normal period of gestation, she would have been conceived about July 8, 1931, and allowing a variation of not more than 20 days either way, the conception may have been any time between June 28, and July 28, 1931, * * *"

In In Re Asbury's Estate (Asbury v. Mc-Queen), 192 Okl. 440, 136 P.2d 913, 915, it is stated:

"The marriage heretofore considered was not dissolved until long after the birth of Annie Asbury. Consequently she was born in lawful wedlock. The authorities are not in harmony with regard to the proof necessary to rebut the presumption of legitimacy attributed to a child born in lawful wedlock. It is said in 7 Am. Juris. 656, Paragraph 45, that: ' * * the declarations of a husband that a child born in wedlock is not his are not sufficient to prove its illegitimacy, notwithstanding it was born only three months after the marriage and a sep-aration between his wife and himself * * *.' "

In Winget v. Winget, 202 Okl. 298, 213 P.2d 288, it is stated:

"A child born in wedlock is presumed to be legitimate, and where its mother cohabited with her husband during the period of possible conception, the presumption is that the husband is the father of the child, and such presumption can be overcome only by strong and convincing evidence."

In Jackson v. Jackson, supra, it is stated:

"The rule as to the degree of proof necessary to overcome the presumption of legitimacy is stated in Re Davis' Estate, 169 Okl. 133, 36 P.2d 471, as follows: 'The presumption of legitimacy declared by section 1683, O.S. 1931, (10 Okl.St.Ann. § 3) can be disputed only by the husband or wife or the descendent of one or both of them. The testimony to overthrow such presumption must be strong, satisfactory, and conclusive evidence that the husband did not have access to the mother of the child when it was begotten, and must furnish clear proof to the contrary, disproving every reasonable possibility of such access.' "

The doctor who delivered the baby stated that it was possible to have a variation of four weeks from the average period of gestation. An expert witness called by plaintiff fixed 21 days as a possible variation from the normal period of birth. The trial court found from the evidence that plaintiff was the father of the child. As stated in Jackson v. Jackson, supra:

"The trial court had the witnesses before him where he could observe their demeanor on the witness stand, and upon consideration of all the evidence, facts, and circumstances in evidence found against the marriage."

The judgment rendered by the trial court is not clearly against the weight of the evidence.

Judgment affirmed.

WELCH, C. J., and DAVISON, HALLEY, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ. concur.