1997 OK 102

**Carneisha Ladarrian DELONEY, a minor, by and through her Mother and Guardian Ad Litem, Charleszetta DELONEY, Appellee,**

v.

**Cartius DOWNEY, Appellant.**

No. 85326.

Supreme Court of Oklahoma.

July 15, 1997.

Rehearing Denied Sept. 24, 1997.

**314**

Warner E. Lovell of Abel, Musser, Sokolosky, Mares, Burch, Kouri & George, Oklahoma City, for Appellee.

Barry K. Roberts, Norman, for Appellant.

LAVENDER, Justice.

¶ 1 Carneisha Ladarrian Deloney, a minor child (appellee), by and through her mother and guardian *ad litem,* Charleszetta Deloney (mother), sued Cartius Downey (appellant) to establish paternity and child support. A non-jury trial was held. The trial court judgment: found 10 O.S.Supp.1994, § 3 did not bar the paternity suit; established appellant's paternity; and ordered him to pay child support.

¶ 2 The Court of Civil Appeals (COCA) reversed, essentially because, in their view, the provisions of § 3 precluded appellee from proceeding to prove appellant's paternity because another man, Lawrence A. Deloney, Jr. (former husband), who married mother about two weeks before appellee's birth, was conclusively presumed to be the father. The COCA remanded with directions to enter judgment for appellant. In view of their disposition in favor of appellant, the COCA did not reach two other arguments raised by him for reversal, to wit: the preclusive effect of a prior divorce decree between mother and husband, and error as to the amount of child support awarded. We previously granted certiorari and now hold the COCA erred in reversing the trial court judgment.

¶ 3 We hold instead, § 3 did not preclude appellee from proceeding to establish paternity in appellant because the trial court found the former husband had never reared child with mother for a two year period and this factual determination is not against the clear weight of the evidence, nor is the trial court decision contrary to any controlling legal principle. Further, the paternity suit is not an impermissible collateral attack on a prior divorce decree between mother and her former husband. Neither claim preclusion (*res judicata*) or issue preclusion (collateral estoppel) bars the present suit, because appellee was not a party to the prior divorce action, nor can she be considered to be a privy of either mother or former husband in relation to any determination therein as to her paternity. Additionally, no abuse of discretion occurred as to the amount of child support awarded. Finally, child is entitled to appellate attorney fees which should be determined by the trial court on remand.

## PART I. WHERE EVIDENCE SHOWED AND TRIAL COURT FOUND THAT CHILD BORN DURING MARRIAGE WAS NOT REARED BY MOTHER AND FORMER HUSBAND FOR TWO YEARS, CHILD IS NOT BARRED FROM ESTABLISHING PATERNITY IN A MAN OTHER THAN FORMER HUSBAND.

¶ 4 Appellant basically relies on three statutes to argue the trial judge erred in allowing appellee to proceed with this paternity suit: 10 O.S.1991, § 1, and 10 O.S.Supp.1994, §§ 2 and 3, which provide in pertinent part as follows:

§ 1.

All children born in wedlock are presumed to be legitimate.

§ 2.

A. Except as otherwise provided by Section 215 of Title 84 of the Oklahoma Statutes, a man is presumed to be the natural father of a child for all intents and purposes if:

1. He and the child's natural mother are or have been married to each other and the child is born during the marriage

. . .

\*　　\*　　\*　　\*　　\*　　\*

B. The presumption of paternity created pursuant to this section may be disputed pursuant to Section 3 of this title.

§ 3.

A. The presumption of paternity created pursuant to Section 2 of this title may be disputed only by the husband or wife, the putative father or their descendants. Paternity may be established pursuant to Section 70 of this title.

B. If a child is born during the course of the marriage and is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of at least two (2) years, the presumption cannot be disputed by anyone.[1]

¶5 The judgment under examination succinctly set forth the trial judge's view on the inapplicability of the two year limitation period of § 3. It states:

THE COURT FINDS [appellee] has met her burden of proof relating to rebutting the presumption of legitimacy under Title 10 O.S. § 3. Specifically, THE COURT FINDS that said statute has no application to the case at bar for the reason [appellee's] mother, Charleszetta Deloney, and her husband at the time, Lawrence Deloney, Jr., did not rear [appellee] for a period of two (2) years. Furthermore, THE COURT FINDS that the parties separated after the year 1980 and, while the parents continued to have communications with each other and sexual contact, they did not actually join in raising [appellee] for a period of two (2) years, whereupon the requirements of [ ] § 3

have not been met so as to bar [appellee] to establish paternity through this action against [appellant].

¶6 On appeal, appellant challenges the determination the limitation period did not act to bar the paternity suit against him because he believes the evidence showed mother and her former husband reared appellee for, at least, two years after her birth. The trial judge disagreed and we find no error in that decision after a thorough review of the record.

■ ¶7 Although it has long been recognized that to overcome the presumption a married woman's child is the issue of her husband, the evidence must be clear, distinct, satisfactory and conclusive [*Bell v. Territory*, 8 Okla. 75, 56 P. 853, 855 (1899); *Secondine v. Secondine*, 311 P.2d 215 (Okla.1957) ], this Court has also recognized a trial court's decision in this type of case will generally not be overturned unless the factual findings are clearly against the weight of the evidence. *In Re Davis' Estate*, 169 Okla. 133, 36 P.2d 471, 473 (1934). With these standards in mind a look at the evidence before the trial judge is in order.

¶8 The parties stipulated that mother and her former husband married on January 21, 1980 and that appellee was born about two weeks later on February 4, 1980. It was also stipulated that the marriage ended in divorce on October 18, 1982. It is also worth noting that another child (Lawrence A. Deloney, III) was born during the marriage—this child's birth being February 24, 1981. Appellant primarily relies on various documen-

---

1. We note that although the versions of §§ 2 and 3 quoted in the text were those in effect at the time this matter was tried and are the current statutory provisions, the 1994 versions quoted are amendments from earlier ones which were in effect when: appellee's mother actually married her former husband on January 21, 1980; appellee was born on February 4, 1980; and the instant proceeding was filed in the trial court on May 17, 1994. See 10 O.S.1991, §§ 2 and 3. Although § 2 was amended substantially in 1994 and § 3 to a lesser degree, for the purposes of this case our decision would be the same under either the current manifestations of §§ 2 and 3 or the ones in effect on the dates specified above. Specifically, both the prior version of § 3 and the current one contain the two year statute of limi-

tation relied on by appellant to bar the paternity suit against him and we can discern no difference in its effect under the situation presented in this case. We also note that mother actually filed an earlier (February 3, 1993) paternity and child support case against appellant, which was consolidated with appellee's case in the lower court. As we view the trial court record, however, no decision was ever reached in the mother's case and, in fact, a dismissal without prejudice was filed by mother of her suit against appellant on February 14, 1995. We, thus, have no occasion to decide any issue concerning mother's rights (if any she has) against appellant, as we view this matter only as appellee's (i.e. child's) paternity and child support case.

tary evidence admitted at the trial to support his position that mother and her former husband actually lived together with appellee as a family up through the time of divorce (i.e. over a two year period) and, apparently, that the evidence shows they were actually living together as a family well into the 1990s. It is also clear that appellant, in part, has based his position on an attack on the credibility/veracity of the testimony presented to the trial judge by mother, former husband, and mother's cousin and sister.

¶ 9 The documentary evidence relied on primarily consists of certain documents from mother's and former husband's divorce case, workers' compensation court records, Oklahoma Department of Human Services' records and other legal or legally related documents, which span a time frame from the early 1980s to well into the 1990s. Appellant's position is that the documents show for much (if not all) of this time that the former husband was listing his address as the same as mother's. In that there is no dispute that mother lived with and reared appellee during this period, appellant's argument is essentially the documents plainly show that the former husband, mother and appellee lived together as a family unit over this time period.[2]

¶ 10 Although there are numerous documents in the record showing former husband using mother's address over the span of time appellant contends, the reason for such use was clearly explained by the testimonial evidence. That evidence is basically as follows. At the time of child's birth husband was in the United States Army. The day after the birth he left for Germany, where he was apparently assigned by the Army. Neither mother or appellee accompanied him, but they remained at a residence in the Oklahoma City area. After approximately two months in Germany former husband returned to the United States. Upon his return he spent about two days at the family home with mother and appellee, and thereafter, he left as he was stationed at Fort Sill.

¶ 11 Other testimony was that former husband left the Army in September 1980. Around November of 1980 he did actually move into the family residence with mother and appellee, but he remained there only through December 1980, at which time he moved out. Although evidence was presented that mother and husband remained friends and that they continued to have sexual relations after December 1980, a fair summary of the testimonial evidence was that after said time mother, her former husband and appellee did not again live together as a family unit. Essentially, both mother and husband testified to this fact and their testimony was corroborated by the testimony of mother's sister and a cousin. The former husband explained his use of the mother's address in the following manner: he never stayed in one place for a long period of time, and because he needed somewhere to receive mail, mother agreed to allow him to use her address for such purpose.

¶ 12 Evidence was also presented that even before appellee was born the former husband began denying to friends and relatives that he was the father, he continued to deny parentage after the birth, and that mother actually told one of the attorneys from a legal aid organization representing her in the divorce case against the former husband, that appellant—not her former husband—was the father. The only time the former husband indicated he was appellee's father was when he would be with appellee and the other child born during the marriage (who he acknowledges is his son) and he would make the statement to strangers that he was appellee's father—in an effort not to embarrass appellee.

¶ 13 Obviously, the trial court was in the best position to interpret the demeanor of the individuals testifying and it is equally obvious by his decision, he credited the testimony that was in favor of a finding the former husband did not rear appellee for a two year period. *See In Re Davis' Estate, supra,* 36 P.2d at 473 (recognizing that trial judge has the benefit of observing the ap-

---

**2.** We do not deem it necessary to detail each and every piece of documentary evidence that was before the trial judge, or every explanation that was given on behalf of appellee as to why said documentation was insufficient to show that former husband actually reared her for a two year period. A general discussion of the evidence is sufficient to dispose of this case.

pearance, manner and conduct of the witnesses, and their apparent interest or lack thereof in the outcome of the trial). This Court has also fairly recently recognized that a presumption of legitimacy does not arise out of allegations, but requires proof of marriage of the parents at the time of birth and that the husband and wife cared for the child as a member of their family for at least two years without any question of parentage. *Matter of M.A.H.,* 1993 OK 92, 855 P.2d 1066, 1070; *See also Villegas v. Villegas,* 1993 OK CIV APP 144, 859 P.2d 1138, 1139–1140.[3] Although the documentary evidence might be said to indicate or raise, at least, an inference of rearing of appellee for the required two year period, the evidence was satisfactorily rebutted by evidence presented on behalf of appellee that the former husband did not actually live at the family home(s) or rear her as a member of his family for the required period. In our view, the trial judge's finding that the former husband did not rear appellee as a member of his family after December 1980 (i.e. a date only approximately eleven (11) months after her birth) is supported by the clear weight of the evidence. Furthermore, nothing has been presented to us that would indicate the trial judge's decision in such regard is contrary to any controlling legal principle and we have been presented no viable reason to disturb it. The appellee was, therefore, not foreclosed by § 3 from establishing paternity in appellant.[4]

¶ 14 As to the finding of paternity in appellant, the evidence is virtually undisputed that he is, in fact, the biological father of appellee. As we view the trial court record and his appellate submissions, he essentially does not even take issue with the fact he is appellee's biological father. The trial court's decision to establish paternity in appellant was based on the following evidence: mother did not have sexual intercourse with former husband during the year 1979; she had sexual intercourse with appellant in April, May and June 1979 using no birth control (i.e. during the approximate time period appellee would have been conceived); mother had no sexual relations with anyone other than appellant during these months; and blood tests which showed a 99.87% probability of paternity in appellant. There was also evidence tending to show that at times appellant admitted to mother that appellee was actually his child.

¶ 15 In summary, appellee was not barred by the dictates of § 3 from establishing paternity in appellant and the evidence in this record was plainly sufficient to overcome any presumption that former husband was actually her father.

**PART II. THE PRIOR DIVORCE CASE BETWEEN MOTHER AND HER FORMER HUSBAND WHICH RESULTED IN A FINAL DIVORCE DECREE DOES NOT HAVE PRECLUSIVE EFFECT ON APPELLEE'S PATERNITY SUIT AGAINST APPELLANT.**

¶ 16 Appellant also argues this paternity suit is an impermissible collateral attack on the final decree of divorce between appellee's mother and the mother's former husband. In essence, what appellant is argu-

---

**3.** It is probably improper to continue use of the terms legitimate and illegitimate to describe children born during a marriage and those born outside the confines of any marriage relationship of the child's parents, respectively. Current Oklahoma statutory law deems all children born within the State of Oklahoma to be legitimate [10 O.S.1991, § 1.2] and the term illegitimate wherever that term may appear in the Oklahoma Statutes has been deemed by the Legislature to refer to a "child born out of wedlock". 10 O.S.1991, § 1.1.

**4.** Contrary to appellant's apparent assertion, the instant matter is not controlled by *David V.R. v. Wanda J.D.,* 1995 OK 111, 907 P.2d 1025, nor is the trial judge's ruling adverse to that case. In *David V.R.,* aside from the fact the paternity suit was brought by the purported biological father who claimed to have had an extramarital affair with the mother during her marriage to a former husband, in that case we specifically pointed out that the mother and her former husband had reared the child as a member of their family during the first two years of life, without either of them disputing the paternity of the child during this two year period. *Id.* at 1027. The two main issues in that case were the putative father's contentions the two year limitation of § 3 deprived him of constitutional due process and an argument the limitation period should have been tolled because he was somehow deprived of knowledge of the child's parentage until the limitation period had ended. *David V.R.* simply does not control the outcome of this appeal.

ing is that the prior divorce decree should have preclusive effect on appellee's paternity suit against him under the doctrines of either claim (*res judicata*) or issue (collateral estoppel) preclusion. We disagree.

¶ 17 The central elements of these two doctrines are well known. Claim preclusion operates to bar relitigation by the parties or their privies of issues which either were or could have been litigated in a prior action which resulted in a final judgment on the merits. *Erwin v. Frazier*, 1989 OK 95, 786 P.2d 61, 64. As to issue preclusion, it requires, at a minimum, that the party against whom it is being asserted was either a party to or a privy of a party to the prior action and that the issue subject to preclusion have been actually adjudicated in some prior case in which the issue was necessary or essential to the outcome. *Carris v. John R. Thomas & Associates, P.C.*, 1995 OK 33, 896 P.2d 522, 527–528, read in conjunction with *Erwin v. Frazier, supra*. Neither doctrine applies here for the reason appellee was not a party to the prior divorce action, nor can she be said to be a privy of either her mother or the mother's former husband in relation to any paternity determination made in that case.

¶ 18 First off, we must note it is highly questionable from our review of the record (which contains certain filings in the prior divorce case, including the final decree of divorce) that the issue of appellee's paternity was actually litigated in that case. Although filings in that case do appear to assert or decide that appellee was born "of" the marriage, it is clear to us nothing before the trial court in this case shows the question of appellee's paternity was actually a contested issue in the divorce action. What the record shows is that the mother's suit for divorce against her former husband was essentially handled as an uncontested matter. In any event, even assuming the issue of appellee's paternity could somehow be deemed to have been litigated in the prior divorce action, or that it could have been so litigated therein, neither claim or issue preclusion forecloses this paternity suit.

¶ 19 Plainly, the record in this case shows appellee was not a party to the prior divorce action. Appellant does not contend otherwise. This leaves the question as to whether appellee can be considered a privy of either of the two parties to that action, her mother or her mother's former husband. Appellee cannot be considered to be a privy of either party for purposes of determination of her true paternity.

¶ 20 Appellant cites no Oklahoma case, and we have been unable to find one, that would make appellee a privy of either her mother or the former husband as to any paternity determination made in the prior divorce case. Two examples of cases relied on by appellant provide him no assistance. In *Pippin v. Jones*, 1993 OK CIV APP 113, 856 P.2d 609, it was the ex-wife that was precluded from pursuing a paternity action against a putative father, where the divorce decree adjudged her ex-husband to be the child's father. In *Arnold v. Arnold*, 207 Okla. 352, 249 P.2d 734 (1952), it was the ex-husband who was precluded from denying paternity in a subsequent proceeding brought by the ex-wife for child support because the ex-husband had admitted his paternity in the prior divorce action and the divorce decree found him to be the father. Neither case spoke to the situation presented in this appeal.

¶ 21 Although this Court has not determined the precise issue, numerous courts from other jurisdictions faced with the question have determined a child in situations analogous to that presented here cannot be considered to be a privy of the parties to a prior divorce or paternity action, where the child's interests do not coincide with the parties to the prior proceeding. In *Simcox v. Simcox*, 131 Ill.2d 491, 546 N.E.2d 609, 137 Ill.Dec. 664 (1989), the Supreme Court of Illinois held that children are not privies of the mother and ex-husband in relation to a divorce proceeding because the interests of children are not properly represented in such proceedings. For analogous cases, see *In Re Paternity of Amber J.F.*, 205 Wis.2d 505, 557 N.W.2d 84 (Wis.App.1996); *Commonwealth of Kentucky, ex rel. Hansard v. Shackleford*, 908 S.W.2d 671 (Ky.App.1995); and *Matter of Paternity of SDM*, 882 P.2d 1217 (Wyo.

1994); *see also Willerton v. Bassham,* 111 Nev. 10, 889 P.2d 823 (1995).

¶ 22   For a child, like appellee here, to be bound by such a prior proceeding, it must be found that there is actually an identity of interests between the child and a party to the previous suit so it can be said a party to the earlier action represented the same legal interests as those of the child. *In re Paternity of Amber J.F.,* 557 N.W.2d at 87. Merely because the interests of the child might coincide to some degree with those of a party to a previous divorce or paternity suit as to certain matters (an example of which may be on the issue of child support), the child clearly has other interests that do not coincide with the interests of the mother or the mother's former husband. Examples of such other interests would be the potential financial benefits flowing from establishing paternity in a man other than the former husband of the child's mother. These interests include inheritance rights, social security survivor benefits and employee/workers' compensation death benefits. *See Id.* at 87; *Willerton v. Bassham,* 889 P.2d at 830. A child further has interests in establishing her paternity that transcend mere financial ones and such interests are no less real and important. The child has an interest in ascertaining his or her heritage and lineage, not only for the purpose of establishing familial bonds, but potentially to gain knowledge of medical history from a true biological father's family. *In re Paternity of Amber J.F.,* at 87; *Willerton v. Bassham,* 889 P.2d at 830.

¶ 23   In that it cannot be said appellee is a privy of either her mother or her mother's former husband in the prior divorce action, it is our opinion it would be inappropriate to bind her to any determination that may have been made as to her paternity in that case. In our view, neither claim or issue preclusion can be used by appellant to bar appellee's paternity suit against him.

**PART III. NO REVERSIBLE ERROR OCCURRED IN THE TRIAL COURT'S SETTING OF THE AMOUNT OF CHILD SUPPORT.**

█ ¶ 24   Appellant complains that the trial judge erred in failing to take into consideration, when setting the amount of child support to be paid for the maintenance of appellee, appellant's payment of other court-ordered child support obligations for his other children. He relies on 43 O.S.Supp.1995, § 118(B)(5), which provides:

> The amount of any preexisting district or administrative court order for current child support for children not before the court or for support alimony arising in a prior case shall be deducted from gross income to the extent payment is actually made under such order[.]

Appellant's position is that if his purported payments for support of his other children had been taken into account by the trial court, his gross income would have been lower and, thus, his child support obligation to appellee reduced under the applicable child support guidelines.

¶ 25   Appellant's evidence in the trial court that he was paying child support under some type of order(s) consisted solely of his testimony. No documentation was submitted that he was in reality paying the amount testified to. From our review of the record, it is clear the trial judge was unwilling to credit the testimony of appellant that he was actually making other child support payments in the amounts he claimed, without some supporting documentation. As we noted in PART I, *supra,* it is the trial judge who has the benefit of observing the witnesses and in deciding issues concerning credibility. We do not find error in the trial judge's failure to credit appellant's testimony, without some type of supporting documentation, nor do we find an abuse of discretion on the issue. Accordingly, we have been provided no reason to disturb the ruling of the trial court on the amount of child support ordered to be paid by appellant.

**PART IV. APPELLEE IS ENTITLED TO APPELLATE ATTORNEY FEES.**

█ ¶ 26   10 O.S.1991, § 89.3 provides as follows:

> In an action to determine paternity brought pursuant to Section 89 of Title 10 of the Oklahoma Statutes, the prevailing party shall be allowed reasonable costs and attorney fees to be set by the court.

¶ 27 One of the statutes upon which this paternity suit was brought was 10 O.S.Supp.1995, § 89. Section 89(A), in relevant part, grants allowance to a child to bring a civil proceeding in district court to determine paternity and the amount of child support due and owing for the maintenance of the child.[5] When there is statutory authority to award attorney fees for legal services performed in the trial of a matter, additional attorney fees are allowable to the prevailing party for legal work rendered in the appellate court. *Sisney v. Smalley,* 1984 OK 70, 690 P.2d 1048, 1051. Section 89.3 is an unambiguous statute providing that the prevailing party shall be allowed their attorney fees for services performed in the trial court [*James v. Hopmann,* 1995 OK CIV APP 105, 907 P.2d 1098], appellee is the prevailing party in this case, and she is entitled to recover for legal services rendered on appeal. The amount of attorney fees for such appellate legal services should be determined by the trial court on remand. 12 O.S.Supp.1995, § 696.4(C).[6]

¶ 28 In conformity with the views expressed in this opinion, the Court of Civil Appeals' memorandum opinion is **VACATED**, the trial court judgment is **AFFIRMED** and the matter is **REMANDED** to the trial court for a determination of the amount of appellate attorney fees to be awarded to appellee.

¶ 29 KAUGER, C.J., and HODGES, LAVENDER, WILSON and WATT, JJ., concur.

¶ 30 OPALA, J., concurs in part; dissents in part.

¶ 31 SUMMERS, V.C.J., and SIMMS and HARGRAVE, JJ., dissent.

**5.** In actuality, the statute in effect when this suit was initiated by appellee in May 1994 was 10 O.S.1991, § 89. Under both the 1991 and 1995 versions of § 89(A) the child is allowed to bring a civil proceeding in district court to determine paternity and for child support. Section 89 has been amended by the 46th Oklahoma Legislature in the recently concluded legislative session by Senate Bill 706, § 3, which was approved by the Governor on June 10, 1997, with an effective date of July 1, 1997. The amendment does not effect our disposition in this case.

**6.** Section 696.4(C) generally requires an appellate court, after deciding appellate attorney fees should be awarded to a party, to remand to the trial court for determination of their amount. Subsection (C) of the provision remains unchanged by a recent legislative amendment to § 696.4. 1997 Okla. Sess. Law Serv. (West), Ch. 102, § 2. We further note appellant also filed a motion with this Court to award him counsel fees for appeal-related services. In that appellant is not the prevailing party he is not entitled to appellate attorney fees.