2011 OK CIV APP 38

**Ed WINTERHALDER, Blue Collar Financial Group of Oklahoma, Meridian Capital, Donna Murphy, Sharon Feary, Bill Gregory, Gale Davis and Carolyn Davis, Plaintiffs/Appellants,**

v.

**BURGGRAF RESTORATION, INC., et al., Defendants/Appellees,**

**Perry W. Newman, Third Party Defendant.**

No. 106,868.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 25, 2011.

Perry W. Newman, Owasso, Oklahoma, for Plaintiffs/Appellants Gale Davis and Carolyn Davis.

John W. Anderson, Jr., Tulsa, Oklahoma, for Defendants/Appellees.

JOHN F. FISCHER, Judge.

¶ 1 Gale and Carolyn Davis appeal the judgment entered by the district court in favor of Burggraf Restoration, Inc., on the ground that the Davises' claim was barred by previous litigation between these parties. Because it cannot be determined from the record on appeal whether the Davises' claim is barred, we reverse and remand to the district court for further proceedings consistent with this Opinion.

## BACKGROUND

¶ 2 The Davises joined with six other plaintiffs and filed this suit alleging breach of contract, negligence, fraud and home repair fraud against Burggraf. Burggraf answered and asserted affirmative defenses contending that the Davises' claims arose from the same construction contract as Burggraf's earlier small claims action and were barred. Burggraf and the Davises entered into a Stipulation and Order, stipulating to certain facts and agreeing that the district court could enter judgment based on those facts. The relevant facts from the Stipulation are summarized as follows:

1. On March 9, 2002, the Davises suffered fire, smoke and water damage to their home located in Claremore, Oklahoma.

2. Defendant, Burggraf Restoration, Inc., was employed by Allstate, the Davises' insurance company, to perform fire, smoke and water damage repair and restoration services on the Davises' home.

3. Burggraf began work on the Davises' home on March 14, 2002, and was dismissed from the work site by the Davises in September 2002.

4. On October 4, 2002, Burggraf filed a small claims case in Tulsa County District Court, Case No. SC–2002–17400, to collect sums due for work performed on the Davises' home.

5. On November 15, 2002, the Davises sent a letter to Burggraf listing 18 items of substandard work and/or damage caused by Burggraf during the restoration and repair services. The Davises refused to pay the full amount of Burggraf's last billing statement and demanded Burggraf address the items listed in the letter. Burggraf refused to perform further work on the residence until the Davises paid the balance of the account billed.

6. Burggraf's case was scheduled for trial on October 31, 2002. At the court's direction, the parties met to see if the case could be resolved. The parties agreed to pass the trial to November 15 so that the Davises could work with their Allstate agent to get Burggraf paid. The Davises also requested a sample of the carpet Burggraf was storing that had been ordered for the Davises' home.

7. On November 15, the trial was rescheduled for December 2 by the agreement of the parties to allow the Davises' insurance agent more time to investigate their claim.

8. On December 2, the Davises asked the district court for a continuance in order to secure counsel and determine whether a counterclaim was necessary. The trial was rescheduled for December 16, 2002.

9. The Davises retained an attorney, who negotiated a settlement with Burggraf the morning of trial. The Davises agreed to pay the $1,616.00 owed Burggraf and Burggraf agreed to deliver the carpet it was storing to the Davises. Based on that agreement, Burggraf's counsel informed the Court of the settlement and the trial date was stricken.

10. However, the Davises did not pay Burggraf as agreed. On July 14, 2003, Burggraf's counsel filed a motion to set the case for trial on the small claims docket. When Burggraf failed to appear for the scheduled trial on August 15, 2003, the court dismissed the case.

11. Burggraf filed a second small claims action against the Davises on April 12, 2004 (SC–2004–4971). The Davises were served with summons on May 4, 2004. The Davises again did not file a counterclaim within the period required by Okla. Stat. tit. 12, § 1758. Burggraf's second action was based on the same underlying transaction or occurrence as its first action, SC–2002–17400.

12. Both parties appeared for trial on May 17, 2004. The Davises agreed to pay the $1,616 owed Burggraf plus $348 in court costs and attorney's fees in exchange for Burggraf delivering the carpet to their son's residence. The parties informed the court of their resolution and the case was stricken from the docket to be reset on application. No journal entry of judgment, written settlement agreement or minute order was prepared or filed in this case on the day of trial.

13. On May 28, 2004, the Davises paid the sum of $1,616 to Burggraf, plus $348 in costs, and Burggraf delivered the carpet to the Davises' son as agreed in the parties' settlement.

14. On July 12, 2004, Burggraf filed a dismissal with prejudice of the second small claims case.

15. No written settlement was executed in either small claims case. The court did not grant relief to either party. Neither party executed a release and waiver in either of the small claims cases.

¶ 3 After submission of briefs, the district court found that the Davises' claim in the current action was barred by section 1758 of the Small Claims Procedure Act and the doctrine of *res judicata* and entered judgment in favor of Burggraf. The Davises appeal.

## STANDARD OF REVIEW

¶ 4 Although no motion was pending when the order appealed was filed, it appears that the parties intended that their Stipulation be treated as cross-motions for summary judgment. "The meaning and effect of an instrument filed in court depends on its contents and substance rather than on the form or title given it by the author." *Whitehorse v. Johnson,* 2007 OK 11, n. 13, 156 P.3d 41. We review a trial court's order granting summary judgment *de novo. Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. The district court's judgment was based on its interpretation of statutes regulating counterclaims and the doctrine of *res judicata.* "A legal question involving statutory interpretation is subject to *de novo* review . . . i.e., a non-deferential, plenary and independent review of the trial court's legal ruling." *Heffron v. Dist. Court of Oklahoma County,* 2003 OK 75, ¶ 15, 77 P.3d 1069, 1076 (citing *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305).

## ANALYSIS

¶ 5 The procedural history of the parties' dispute is unusual. The parties reached a settlement in the first case filed by Burggraf. That settlement was not reduced to writing, but the Stipulation discloses the central terms of the settlement—the Davises agreed to pay Burggraf $1,616 and Burggraf agreed to deliver carpet it had been storing for the Davises. The Davises failed to pay according to the terms of the settlement and, rather than filing a motion to enforce the settlement, Burggraf caused the case to be placed back on the trial docket. The court dismissed the case when Burggraf failed to appear on the scheduled trial date. Eight months later, Burggraf filed a second action. Like the first action, this case was based on breach of the construction contract for repair of the fire damage to the Davis home, i.e., "the same underlying transaction or occurrence as its first action." Apparently, Burggraf did not seek to enforce the settlement agreement in the second suit either. However, the record for this appeal does not include the judgment roll for either of the cases filed by Burggraf. According to the Stipulation, on the date the second suit was set for trial the parties informed the district court that the "Davises agreed to pay the $1,616.00 owed Burggraf plus $348.00 in court costs and attorney's fees in exchange for Burggraf delivering the carpet...."[1] The case was then stricken from the trial docket. After the parties exchanged the agreed performance, Burggraf dismissed the second suit with prejudice. According to the Stipulation, there is no written agreement documenting the terms of the parties' settlement and none of the parties "executed a release and waiver in either small claims case."

### I. The Settlement Agreement

■ ¶ 6 The district court stated two bases for its judgment. The first was that the Small Claims Procedure Act barred the claim. *See* 12 O.S.2001 § 1758. The second was that the claim was barred by *res judicata.* Before addressing these issues, we must determine the effect of the settlement agreement reached in the first case. "A settlement agreement is a contract which constitutes a compromise between two or more parties to avoid a lawsuit and amicably to settle their differences on such terms as they can agree." *Whitehorse,* 2007 OK 11, ¶ 9, 156 P.3d at 46 (footnotes omitted). "A settlement agreement is an oral or written contract between the parties. As such, it is subject to the rules of offer and acceptance and of mutual assent which control any issue of contract formation." *In re De–Annexation of Certain Real Property from City of Seminole,* 2009 OK 18, ¶ 8, 204 P.3d 87, 89 (citation omitted). Once a settlement has been reached, the parties' rights and liabilities as to the subject matter of the action are fixed by contract rather than by the judgment of the court. *Corbett v. Combined Commc'ns Corp. of Oklahoma, Inc.,* 1982 OK 135, ¶ 5, 654 P.2d 616, 617–18.

■ ¶ 7 The agreement in the first small claims case clearly settled the claims that Burggraf asserted against the Davises in that case. Because the settlement agreement was not reduced to writing, the Stipulation is the only document in the record providing evidence of the terms of that agreement. Critical to this appeal is whether the terms of the settlement required the Davises to release any claim against Burggraf. The parties stipulated that the Davises did not sign a "release and waiver." Nonetheless, "[a] contract includes not only the promises set forth in express words, but all such implied provisions as are indispensable to effectuate the intent of the parties and as arise from the language of the contract and the circumstances under which it was made." *Whitehorse,* 2007 OK 11, ¶ 9, 156 P.3d at 46 (footnote omitted).

■ ¶ 8 The dismissal with prejudice filed by Burggraf in the second action was necessary to "effectuate" the parties' intent to settle the claim Burggraf asserted in the first action. That conclusion, however, is not necessarily required with respect to the claims the Davises assert in the present litigation other than the release of any claim related to

---

1. It appears that the agreement to pay the $348 may have been a new term agreed to at that time, but because there is no written settlement agreement, this cannot be confirmed.

the carpet that was eventually returned. There is simply no evidence in this record from which to determine whether the Davises agreed, as part of the settlement of the first action, to waive and release any of the claims they now assert in this case. If the Davises did agree to waive or release any claims, then Burggraf is entitled to judgment, although not for the reasons articulated by the district court. In the absence of such an agreement by the Davises, Burggraf is not entitled to judgment in this case unless there is some other legal bar preventing the Davises from litigating the claims they assert in this action.

## II. The Counterclaim Bar of Section 1758

■ ¶ 9 Burggraf first argues that the Davises' claims are barred by 12 O.S.2001 § 1758:

> If the defendant wishes to state a new matter which constitutes a counterclaim or a setoff, he shall file a verified answer, a copy of which shall be delivered to the plaintiff in person, and filed with the clerk of the court not later than seventy-two (72) hours prior to the hour set for the first appearance of said defendant in such action.

Specifically, Burggraf contends that because the Davises did not file a counterclaim it was "*statutorily extinguished* at the time the case was first called to trial in October of 2002." (Emphasis in original). As supporting authority, Burggraf cites *Carter v. Gullett*, 1979 OK 146, 602 P.2d 640, in which the Supreme Court issued a writ of prohibition preventing the district court from permitting a defendant to file a counterclaim after the

date scheduled for hearing the plaintiff's petition. The Supreme Court found that strict compliance with the time limit in section 1758 was required. *Id.* "The act requires a strict compliance with the [72] hour provision of § 1758. The Legislature has mandated a counterclaim should not be allowed unless filed [72] hours before the *date of hearing.*" *Id.* ¶ 7, 602 P.2d at 641 (emphasis added).

¶ 10 The parties herein do not cite, and we have not found, case law interpreting the term "first appearance" as used in section 1785.[2] In *Carter*, the date discussed in the opinion was, at least, the second time the case had been set for hearing. *See Interstate Brands Corp. v. Stephens*, 1980 OK 121, n. 1, 615 P.2d 297 (recognizing that the *Carter* court "in passing, noted that the appearance date [in small claims court] had been once continued" but that *Carter* did not suggest that as a result of the continuance the counterclaim was barred). The issue before the court in *Interstate Brands* was whether a similar time bar contained in section 1757 on transfers from small claims court applied from the date of the last, rather than the first, scheduled appearance:

> We find no expression in [section 1757] which permits a motion to transfer to be filed only before the original appearance date. The language of § 1757 merely states that such motions must be filed 48 hours before the "time fixed in the order for defendant to appear." The meaning of this section we think is clear and unambiguous. Petitioner's motion to transfer, filed seven days before the appearance date last ordered and set, was timely.

2. Published cases mentioning the statute include *Patterson v. Beall*, 2000 OK 92, 19 P.3d 839 (holding that motions for summary judgment under Rule 13 are not applicable in small claims actions); *Gibson v. Copeland*, 2000 OK CIV APP 112, 13 P.3d 989 (holding that the small claims court procedures do not provide for an oral motion to dismiss); *Jackson v. Scott*, 2000 OK CIV APP 139, 18 P.3d 369 (discussing the same issues as *Patterson* and *Gibson* ); *Fowler Equip. Co. v. Harry Houston Oil Co., Inc.*, 1997 OK CIV APP 52, 945 P.2d 513 (holding that the announcement by both parties that they were ready to proceed on the petition and counterclaim waived any argument that the counterclaim was untimely served); *McIntosh v. Limestone Nat'l*

*Bank*, 1995 OK CIV APP 24, 894 P.2d 1145 (holding that a small claims judgment triggers counter-claim preclusion pursuant to section 2013); *Interstate Brands Corp. v. Stephens*, 1980 OK 121, 615 P.2d 297 (discussed in this Opinion); *Carter v. Gullett*, 1979 OK 146, 602 P.2d 640 (holding that a counterclaim in excess of small claims limits is subject to the section 1758 time requirements); *Hughes v. Dunsmoor*, 1979 OK CIV APP 22, 594 P.2d 1231 (holding that a counterclaim filed no more than 24 hours prior to the only hearing set in the case was untimely), and *Lee Wayne Co., Inc. v. Pruitt*, 1976 OK CIV APP 23, 550 P.2d 1374 (examining evidentiary issues not related to a counterclaim).

*Id.* ¶ 9, 615 P.2d at 298–99. We find a similar interpretation is appropriate for section 1758. "Procedures under the small claims act are less formal, void of rigid restrictions...." *Carter*, 1979 OK 146, ¶ 7, 602 P.2d at 641. Review of these authorities indicates that the intent of the 72–hour rule in section 1758 of the Small Claims Act was to provide the plaintiff sufficient notice prior to actual litigation of any counterclaim.[3]

¶ 11 Consequently, we do not find, as urged by Burggraf, that the Davises were required to file their counterclaim seventy-two hours prior to October 31, 2002. And, because of the several continuances ordered by the district court at the parties' request after that date and the eventual dismissal of the case because of Burggraf's failure to appear, there is no "date last ordered and set" for the Davises to appear in this case that could have triggered application of section 1758. Therefore, section 1758 did not operate to bar the Davises from asserting claims arising out of the construction contract against Burggraf in any suit filed after August 15, 2003, the date Burggraf's first small claims suit was dismissed without prejudice.[4]

III. The Counterclaim Bar of Section 2013

■■■ ¶ 12 Burggraf argues, in the alternative, that because the Davises failed to raise a compulsory counterclaim[5] in Burggraf's original action, those claims are now barred by 12 O.S.2001 § 2013(A). That section requires a party to assert as a counter-

claim any claim against any opposing party that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." 12 O.S.2001 § 2013(A). "The failure to assert a compulsory counterclaim bars a later action on that demand." *Robinson*, 2004 OK 50, ¶ 8, 100 P.3d at 675. A judgment in a small claims suit will trigger the section 2013(A) counterclaim bar. *See McIntosh v. Limestone Nat'l Bank*, 1995 OK CIV APP 24, ¶ 6, 894 P.2d 1145, 1147.

■■■ ¶ 13 However, the Committee comments to section 2013 are clear; the statute was not intended to bar unasserted compulsory counterclaims if the action was dismissed before trial.

> If a defendant fails to assert a compulsory counterclaim in an answer, but the action is dismissed before trial, the defendant is not precluded from raising his claim in a second action. *Lawhorn v. Atlantic Ref. Co.*, 299 F.2d 353 (5th Cir.1962); *Douglas v. Wisconsin Alumni Research Found.*, 81 F.Supp. 167 (N.D.Ill.1948). *See also Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir.1967) (assertion of compulsory counterclaim does not waive defense of lack of jurisdiction).

12 Okla. Stat. Ann. § 2013, Committee cmt. (West 1993). The Supreme Court has confirmed this rule:

> Since Oklahoma has rested its compulsory counterclaim bar on the doctrine of claim preclusion, the bar must rest upon the existence of a judgment on the merits ren-

---

3. This interpretation is consistent with other district court proceedings in which a party may be permitted to file a counterclaim after the time required by the Oklahoma Pleading Code. *See* 12 O.S.2001 § 2013(F) ("Omitted Counterclaim").

4. Burggraf does not argue that section 1758 was triggered by the Davises' failure to file a counterclaim in the second small claims action. Our interpretation of section 1758 would preclude that result for essentially the same reasons discussed with respect to the first small claims suit.

5. Burggraf contends that the parties stipulated that the Davises' counterclaim was compulsory. We find no such stipulation. The parties did stipulate that Burggraf's second small claims action "was based on the same underlying transaction or occurrence as its first action." This does not address the nature of the Davises' claims. Nonetheless, for purposes of this analysis, we

assume that the claims asserted by the Davises in this case arouse out of the transaction or occurrence that was the subject of Burggraf's small claims actions, and are, therefore, "compulsory" as defined in 12 O.S.2001 § 2013(A). Because the appellate record does not contain the judgment roll from either of Burggraf's small claims actions, we cannot determine whether this assumption is well founded. *See Robinson v. Texhoma Limestone, Inc.*, 2004 OK 50, ¶ 13, 100 P.3d 673, 677. There are several exceptions to the compulsory counterclaim rule. For example, it does not apply if third parties are required for adjudication or the claim is the subject of another action. *See* 12 Okla. Stat. Ann. § 2013, Committee cmt. (West 1993). Neither of these possible exceptions is precluded by the record in this appeal.

dered in the prior action. If the prior action was dismissed before judgment, a party cannot successfully invoke the compulsory counterclaim preclusive bar under § 2013(A) in a subsequent action.

*Robinson,* 2004 OK 50, ¶ 12, 100 P.3d at 676–77. Burggraf's first small claims suit was not terminated by a judgment. The first suit was dismissed by the district court after Burggraf failed to appear. A dismissal for failure to appear is not a decision on the merits. 12 O.S. Supp.2004 § 683 (amended eff. Nov. 1, 2009). Therefore, any claims the Davises have against Burggraf were not barred by section 2013(A) when the first small claims case was dismissed.

## IV. Claim Preclusion

 ¶ 14 Burggraf's final argument is that the Davises' claims in this case are barred by the doctrine of *res judicata,* now known as claim preclusion. *See Deloney v. Downey,* 1997 OK 102, ¶ 16, 944 P.2d 312, 318. As a general rule, claim preclusion bars relitigation of issues that either were or could have been litigated in a prior action that resulted in a judgment on the merits. *See State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 20, 61 P.3d 234, 245. Burggraf contends that its dismissal with prejudice in the second small claims suit barred future litigation of all claims, including all compulsory counterclaims, that were or could have been raised by the Davises in that case. It has long been the rule in Oklahoma that:

A dismissal of a suit made after, and based upon, an agreement between the parties by which a compromise settlement and adjustment of the subject-matter in dispute is made, is a dismissal on the merits, and is equivalent to a judgment of retraxit at common law; and as such would be a bar to further litigation on the same subject between the parties.

*Turner v. Fleming,* 1913 OK 155, ¶ 3, 37 Okla. 75, 130 P. 551, 552. However, where there is no agreement between the parties, the rule in *Turner v. Fleming* does not control. *See Colonial Royalties Co. v. Hinds,* 1948 OK 203, 202 Okla. 660, 216 P.2d 958. A *retraxit* is an open and voluntary renuncia-tion by the plaintiff of the lawsuit. 2 William Blackstone, Commentaries *296.

Retraxit is equivalent to a judicial admission on the part of the plaintiff that the allegations of his petition are to be considered as without further merit, and that he is willing to become forever barred from again asserting rights under the same allegations and issues. This is entirely proper, for when a defendant enters into a bona fide agreement of compromise and settlement, and dismissal is filed by plaintiff pursuant thereto, the defendant should not be required again to defend himself on issues arising out of the same subject matter. There is nothing of a harsh nature in the rule announced in [*Turner v. Fleming* ]. A retraxit is a voluntary acknowledgment that plaintiff has no cause of action, and will not proceed further.

*Boettcher Oil & Gas Co. v. Westmoland,* 1941 OK 52, ¶ 11, 189 Okla. 110, 113 P.2d 824, 825–26. The difference between the dismissal in this case and the dismissals in the *Turner* and *Boettcher* cases is that the dismissals in those cases were entered by the court. In this case, the dismissal was filed by Burggraf. The previously undecided issue raised by Burggraf in this appeal is whether a voluntary dismissal with prejudice by one party has the same effect as a judgment on the merits entered by the court.

¶ 15 "A judgment is the final determination of the rights of the parties in an action." 12 O.S.2001 § 681. A judgment of *retraxit* is "[a] judgment against a plaintiff who has voluntarily retracted the claim." Black's Law Dictionary 847 (7th ed. 1999). After the open and voluntary renunciation of the suit, such a judgment "bars the plaintiff from relitigating the claim." *Id.* It is "equivalent to a judgment that the plaintiff had no cause of action, because the defense of the defendant was found to be sufficient in law and true in fact." *United States v. Parker,* 120 U.S. 89, 95–96, 7 S.Ct. 454, 458, 30 L.Ed. 601 (1887). Clearly, Burggraf's dismissal with prejudice barred it from further litigating the subject matter of its claim against the Davises. *See Perfect Invs., Inc. v. Underwriters at Lloyd's, London,* 1989 OK 148, n. 1, 782 P.2d 932. Burggraf points to no case,

however, holding that a plaintiff may unilaterally dismiss his case with prejudice and thereby automatically preclude the defendant from subsequently litigating his or her claims against the plaintiff.[6] Such a rule, authorizing the use of a voluntary dismissal with prejudice as a preemptive strike against meritorious claims, would be contrary to the purpose and intent of the Oklahoma Pleading Code, which requires not only the "speedy" but also the "just" determination of every action. 12 O.S.2001 § 2001.

¶ 16 Further, a dismissal with prejudice filed by a party is not a judgment entered by the court. Whether it has the same effect depends on the facts of the particular case. When Burggraf filed its dismissal with prejudice, the applicable statute provided:

A plaintiff may . . . without an order of court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action. . . . All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action. Such dismissal shall be in writing and signed by the party or his attorney, and shall be filed with the clerk of the district court, the judge or clerk of the county court, or the justice, where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be without prejudice, unless the words "with prejudice" be expressed therein.

12 O.S.2001 § 684 (amended eff. Nov. 1, 2009).

¶ 17 Although the judgment roll from the second small claims case is not included in the record on appeal, a copy of what purports to be Burggraf's "Dismissal With Prejudice"

in that case is included. That document is signed only by Burggraf's counsel. Therefore, Burggraf's dismissal was authorized by only the first sentence of section 684 and effective to dismiss only the "civil action" Burggraf brought. Further, Burggraf's automatic preclusion rule would be contrary to the express language of section 684. If a counterclaim has been filed:

A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss his action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action.

12 O.S.2001 § 684. In order to preclude the Davises from subsequently asserting any claims they have, Burggraf was required to obtain their release of those claims as part of the settlement or obtain their consent to dismissal of those claims on the record. Neither circumstance is established by the appellate record.

## CONCLUSION

¶ 18 Because the appellate record does not include the judgment roll from either of Burggraf's small claims actions, we are unable to determine whether the Davises agreed to release, as part of a settlement, any claims they had against Burggraf arising out of the same transaction or occurrence that was the subject of Burggraf's prior litigation. Absent an agreement to release their claims, the Davises were not barred by 12 O.S.2001 § 1758; 12 O.S.2001 § 2013(A) or the doctrine of claim preclusion from asserting those claims in a subsequent action against Burggraf. Consequently, we reverse the judgment in favor of Burggraf and re-

---

**6.** Burggraf cites several cases, but these cases do not support its contention. *Goins v. Fox,* 1958 OK 266, ¶ 11, 332 P.2d 220, 222, decided prior to the enactment of section 2013, deals neither with voluntary dismissal, nor the preclusive effect of a voluntary dismissal on unfiled counterclaims. *Pueblo de Taos v. Archuleta,* 64 F.2d 807, 812 (10th Cir.1933), holds that a "dismissal with prejudice implies a decision on the merits." Although cases interpreting the federal counterclaim rule may be instructive because Oklahoma's compulsory counterclaim requirement

"parallels exactly" the language of Fed.R.Civ.P. 13, *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, n. 15, 979 P.2d 252, 256 n. 15, the *Pueblo de Taos* case was decided five years before the first (1938) version of the federal rules of civil procedure, and consequently does not assist in interpreting section 2013. Burggraf further cites numerous cases generally stating the claim preclusion rule, but these cases involve either final judgments or dismissals with prejudice entered by the court.

mand this case for the determination of the terms of the settlement agreement and further proceedings consistent with this Opinion.[7]

¶ 19 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.

---

7. Because of our disposition of this appeal, Burggraf's Motion to Dismiss for Absence of Substantive Merit is denied. Burggraf's Motion for Appeal Related Attorney Fees is denied without prejudice.