HARTZ, Circuit Judge.
Expert South Tulsa (Debtor), a debtor in bankruptcy, seeks to set aside as a fraudulent transfer its own sale of real estate that was encumbered by a mortgage far exceeding the sale price. It contends that it did not receive reasonably equivalent value in exchange for the property. Perhaps it now thinks it can sell the property at a much higher price. Or it may be trying .to assist a related party that acquired the mortgage note after the sale. Regardless of its motive, we reject its claim. Because Debtor received reasonably equivalent value from the sale of the property, it cannot prevail under Oklahoma law or the fraudulent-transfer provision of the Bankruptcy Code. In particular, we reject its contention that it remained liable on the mortgage note after the sale and that the bankruptcy court therefore miscalculated the value it received.
I. BACKGROUND
Debtor is a limited liability company formed to purchase and develop property in Tulsa, Oklahoma. Part of its original funding was a $500,000 loan from the E.H. Hawes Revocable Trust (the Hawes Trust), the original intervenor in this case.[1] The trust is for the benefit of Edwin “Trey” Hawes III (Hawes), the manager of Debtor, and his family.
In 2007 Debtor purchased a property called Memorial Commons through a loan secured by a mortgage on the property. By February 2009 the loan was in default and a foreclosure action commenced that August. Debtor did not defend the foreclosure action, opting instead to find a buyer for the property. One deal fell through in late December. But in early January 2010, Cornerstone Creek Partners, LLC (Cornerstone), made an offer of $3 million. *1296 Debtor and Cornerstone agreed to a sale of the property, contingent on delivery of free and clear title.
At the time of closing, Memorial Commons was encumbered by a $7,754,151.00 mortgage debt and other liens totaling $499,740.29. To effect the closing, the mortgagee released the mortgage and dismissed the foreclosure action with prejudice, and several lienholders dismissed their claims against the property and Debtor. No judgment was entered. Less various fees and taxes, the purchase price was distributed as follows:
1. $1,742,170.16 to the mortgagee.
2. $114,999.77 to other lienholders.
3. $686,000 to Debtor’s unsecured creditors, including $415,000 to the Hawes Trust.
4. $261,477 to Debtor.
After the closing, Hawes contacted the mortgagee multiple times to ask for an assignment of the loan to the Hawes Trust. The mortgagee expressed doubt that the debt was still enforceable but eventually transferred the loan to the Hawes Trust without recourse or warranties as to its validity. Why the Hawes Trust wanted the mortgage note is unclear; but Cornerstone has suggested that Hawes believed that the size of the debt would provide leverage over other unsecured creditors seeking payment from Debtor’s assets. Cornerstone sold Memorial Commons for $4.4 million only 11 days after closing.
In March 2010 a creditor who had not received any of the sale proceeds filed in the United States Bankruptcy Court for the District of Kansas (apparently Debt- or’s principal place of business at the time) an involuntary petition placing Debtor in Chapter 7 bankruptcy, which was converted to Chapter 11 a few weeks later. Debtor brought this adversary proceeding in September 2011, seeking to avoid the sale of Memorial Commons to Cornerstone on the ground that it did not receive reasonably equivalent value for the property. The bankruptcy court granted summary judgment against Debtor, and the Tenth Circuit Bankruptcy Appellate Panel (BAP) affirmed.
II. DISCUSSION
Although' this is an appeal from a BAP decision, see 28 U.S.C. § 158(d)(1), “we review only the' Bankruptcy Court’s decision.” In re Alderete, 412 F.3d 1200, 1204 (10th Cir. 2005). We treat the BAP as a subordinate appellate tribunal whose rulings may be persuasive but are not entitled to deference. Matters of law are reviewed de novo, and factual findings (which are made only by the bankruptcy court, not by the BAP) are reviewed for clear error. See In re Brown, 108 F.3d 1290, 1292 (10th Cir. 1997). The parties agree that state-law- issues are governed by Oklahoma law.
Debtor brings two claims of fraudulent or constructively fraudulent transfer against Cornerstone. Both require that a transfer of property by Debtor have been for less than reasonably equivalent value. Under 11 U.S.C. § 554(b) the bankruptcy trustee has the power to avoid a transfer if it is voidable by a creditor under “applicable law,” which may be state law. See Kupetz v. Wolf, 845 F.2d 842, 845 n.2 (9th Cir. 1988). Debtor relies on Oklahoma’s Uniform Fraudulent Transfer Act, which permits a creditor to void a transfer as fraudulent if the debtor did not “receiv[e] a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at that time.” 24 Old. St. Ann. § 117(A) (emphasis added). Similarly, the trustee may avoid a transfer under 11 U.S.C. § 548(a)(1)(B) if the debtor (1) transferred “an interest ... in property” within two years before the filing of the *1297 bankruptcy petition; (2) received less than a “reasonably equivalent value” in exchange for the transfer; and (3) was insolvent at the time of the transfer or became insolvent as a result of the transfer. 11 U.S.C. § 548(a)(1)(B) (emphasis added). Although both § 544(b) and § 548(a) speak in terms of a “trustee” having the power to avoid a transfer, 11 U.S.C. § 1107 allows a debtor-in-possession, such as Debtor here, to take such action. See 5 Collier on Bankruptcy ¶ 548.02[1] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).
Because fraudulent-transfer statutes are for the protection of unsecured creditors, we measure the value received in terms ok the effect on those creditors. See In re Northern Merchandise, Inc., 371 F.3d 1056, 1059 (9th Cir. 2004) (“[T]he primary focus of Section 548 is on the net effect of the transaction on the debtor’s estate and the funds, available to the unsecured creditors.”); Rubin v. Mfrs. Hanover Trust Co., 661 F.2d 979, 992 (2d Cir. 1981) (noting “the statutory purpose of conserving the debtor’s estate for the benefit of creditors”); In the Matter of Ohio Corrugating Co., 70 B.R. 920, 927 (Bankr. N.D, Ohio 1987) (“The rationale of-the fraudulent transfer provision of the Code is to preserve the assets of the estate.”); see generally In re Image Worldwide, Ltd., 139 F.3d 574, 577 (7th Cir. 1998) (“[T]he [Uniform Fraudulent Transfer Act] is a uniform act, and it derived the phrase ‘reasonably, equivalent value’ from 11 U.S.C. §■ 548(a)(2)-.Thus, we can look to interpretations of ‘reasonably equivalent value’ from § 548 cases .... for assistance in predicting what an [Oklahoma] court would do.” (citations omitted)). Value therefore encompasses more than just the cash exchanged in-the transaction; it includes “satisfaction .... of .a present .or antecedent debt of the debtor.” 11 U.S.C. § 548(d)(2)(A); accord 24 Okl. St. Ann. § 115(A) (“Value is given for a transfer or an obligation if, in exchange for the.transfer or obligation, ... an antecedent debt is secured or satisfied.”). When such a debt is extinguished, the remaining creditors benefit because the satisfied creditor is no longer competing for the debtor’s property.
In support of its claim, Debtor contends that Memorial Commons was worth $4.99 million at the time of Cornerstone’s purchase (a value we can assume to be correct, because Debtor cannot prevail even if the value was that high), yet Cornerstone paid only $3 million. The bankruptcy court rejected the argument largely because Debtor benefited from not only the $3 million but also from release of the more than $6 million it would still owe on .the mortgage loan. Debtor responds that its obligation on the note was not released. Since it is obvious that Debtor received at least reasonably equivalent value for the property if the obligation was released (the amount due on the note, $7.75 million, is more than reasonably equivalent to $4.99 million), we now examine whether there was a release.
In our view, the mortgage loan was discharged as a matter of law. The mortgagee’s foreclosure action in state court sought not only foreclosure on the mortgage but also a judgment against Debtor for the deficiency. The mortgagee ended the. litigation by filing a dismissal with prejudice, stating that it “hereby dismisses all claims or counterclaims, against all other parties, with prejudice.” Aplt. App. at 932. This dismissal relieved Debtor of its obligations on the mortgage note. No further action by the court was necessary.
Debtor argues that the mortgagee, was not bound by the dismissal and could have pursued it to pay the deficiency. It suggests .that it and the mortgagee did not agree to release of the note and it points to *1298 Oklahoma cases stating that the effect of a voluntary dismissal with prejudice depends on what the parties agreed to. Those cases, however, do not support its position here. None allows a party that dismisses a claim with prejudice to later pursue the same claim. The issue in each was the effect of the dismissal on other parties. In Colonial Royalties Co. v. Hinds, 202 Okla. 660, 216 P.2d 958, 962 (1948), a plaintiff had dismissed with prejudice a prior suit against several defendants. In the later litigation involving those defendants (but not the original plaintiff), none was relitigating the prior dispute and nothing indicated that any had reached an agreement with regard to the dismissal with prejudice. See id. In Eaton v. Allen, 362 P.2d 93, 96-97 (Okla. 1961), the driver of a vehicle had dismissed with prejudice his claims against the other driver and that driver’s employer after reaching a settlement with their insurance carrier. When the other driver (an original defendant) then sued the original plaintiff, the court ruled that the earlier dismissal was not intended to bar the later litigation. See id. at 98-99. It said that extrinsic evidence can be considered to resolve ambiguity in a dismissal. See id. at 98.
There was no ambiguity here. The mortgagee dismissed with prejudice its claims under the mortgage and the mortgage note. That dismissal was unequivocally binding on the mortgagee. A third Oklahoma opinion cited by Debtor makes this proposition indisputable. In Winterhalder v. Burggraf Restoration, Inc., 256 P.3d 84, 87 (Okla. Civ. App. 2011), a restoration company dismissed with prejudice its small-claims case against a customer after the customer paid its bill for carpet restoration plus court costs and attorney fees in exchange for delivery of the carpet to the customer. The customer then sued the company for breach of contract, negligence, and fraud. See id. at 86. Debtor relies on the court’s ruling that, absent an agreement to release its claims, the customer was not barred from suing the company. See id. at 92. But Debtor ignores the language from the opinion that is directly on point here: “Clearly, [the company’s] dismissal with prejudice barred it from further litigating the subject .matter of its claim against the [customer].” Id. at 91. When the mortgagee here dismissed its claims with prejudice, it, too, was barred from litigating them later.
Debtor further argues, however, that there was no release of its mortgage loan in this case because the holder of the mortgage note who filed the foreclosure action, OKL 18, LLC, had transferred the note to GTMI, LLC (GTMI), before it dismissed its claims. But under Oklahoma law one who has transferred an interest in the subject matter of litigation may continue to pursue the litigation in its own name on behalf of the transferee. See 12 Okl. St. Ann. § 2025(C) (“In case of any transfer of interest, the action may be continued by or against the original party.”); see also Redcorn, Jr. v. Knox, 345 P.3d 392, 399 (Okla. Civ. App. 2014) (stating that § 2025 was based on Fed. R. Civ. P. 25(c)); 7C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1958 (3d ed. 2016) (“The most significant feature of [Fed. R. Civ. P.] 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named.” (emphasis added)). That was the situation here. Moreover, GTMI expressly authorized the delivery and filing of the dismissal with prejudice. And it would make no sense for GTMI to permit payment to Debtor of $261,477 from the closing if Debtor would still be beholden to it for some $6 million on the note.
*1299 Finally, Debtor argues that the ex-tinguishment of its debt was not “in exchange for” the property it sold. See 11 U.S.C. § 548(a)(l)(B)(i) (trustee may avoid a transfer if debtor “received less than a reasonably -equivalent value in exchange for such transfer” (emphasis added)); 24 Okl. St. Ann. § 117(A) (transfer is fraudulent if made “without receiving a reasonably equivalent value in exchange for the transfer” (emphasis added)). It contends that all Cornerstone wanted was .for the liens to be extinguished (so it would receive clear title) and that release of the debt was therefore not part of the deal. But extinguishment of the debt was simultaneous with the rest of the deal and no reasonable factfinder could find that the extinguishment was an act of generosity divorced from the overall deal. Simply put, the sale was undoubtedly a but-for cause of the extinguishment of the debt. We have no hesitation in holding that the release of the debt was value obtained “in exchange for” the sale of the property.
In short, Debtor received more. than reasonably equivalent value from the sale of Memorial Commons and therefore both its state and federal fraudulent-transfer claims must fail.
III. CONCLUSION
We AFFIRM the decision of the Bankruptcy Appellate Panel.

. Intervenor-Plaintiff-Appellant E.H. Hawes Revocable Trust moved to substitute RE3 Development, LLC as the successor in interest to the trust’s claims in this case. We granted the motion and substituted RE3 Development as Intervenor Plaintiff-Appellant under Fed. R.App. P. 43(b).